## COUNTY OF KENT, SEPTEMBER TERM, 1859,
## AT EAST GREENWICH.

PRESENT:

Hon. SAMUEL AMES, Chief Justice.
Hon. GEORGE A. BRAYTON, ⎱ Justices.
Hon. ALFRED BOSWORTH, ⎰

---

### RHODE ISLAND EXCHANGE BANK *v.* CHRISTOPHER HAWKINS.

Where a court of law is unable to relieve a garnishee who, by pure accident or mistake, has been prevented from thereby accounting under oath in his own discharge, a court of equity will, under its well-settled jurisdiction, grant him relief; but not where neglect of the garnishee or of his agent is distinctly traceable as the cause of the omission to account.

Where a bank, served as garnishee, advised with an attorney retained generally in their business, as to what they must do, and were told to make an affidavit, but did not request the attorney to attend to the matter for them, or by informing him what they had to disclose, or by leaving the copy of the writ with him, signify to him that they expected his services; *Held,* that they had no right to expect that he would act for them in the matter, especially, as before the time of accounting had passed, the cashier, who by law was to make the affidavit, knew that the attorney was acting for the plaintiff in the cause; and that an omission to account under such circumstances was too plainly traceable to neglect, to warrant equitable relief to the bank, when sued as a garnishee neglecting to account.

BILL IN EQUITY to enjoin a suit at law, commenced by the respondent against the complainant corporation, as a garnishee

who had neglected to account under oath before judgment had been rendered in the principal suit; the bill alleging that the complainant was prevented from accounting by accident and mistake, and praying that the judgment might be opened and the complainant permitted to account as garnishee, in the principal suit, with the same effect as if judgment had not been rendered therein.

The cause went to proof; and on the part of the complainant bank the cashier deposed, in substance, that on the last of May or 1st of July, 1855, he was instructed by the board of directors to employ an attorney, who had then come to reside in the village of East Greenwich, in which the bank did business, to act as the general counsel of the bank and to transact all its legal business; that shortly afterwards, meeting the attorney at the railway station in the village he engaged him according to his instructions, although no general retainer was demanded or paid; the attorney then, or a few days after, informing him that there was one case, which he named, in which he could not act for the bank, having been previously retained by the opposite party; that after the bank was served with copies of writs for the purpose of attaching in its hands the personal estate of Gardner & Brother, he mentioned the fact to the attorney, and inquired of him what was necessary to be done. That the attorney replied, " You are garnishees, and must make affidavit; " and nothing more was done or said on either side, the cashier supposing, as he swore, that when any matter required his personal attention in the cases, the attorney would send into the bank, and let him know it.

It appeared that the attorney himself brought the suit in which the bank was served; that the suit was entered at the August term of the court of common pleas for the county of Kent, 1855, and was continued to the next February term of the court, 1856, with leave to the garnishee to make affidavit, at which term, the counsel of Gardner & Brother having withdrawn his appearance, judgment was entered up by default against the defendants, — the complainant not having made affidavit or received any notice from the attorney to do so. The cashier admitted, that during the pendency of the suit he might have

heard that the attorney was acting for the plaintiff in the suit,— now respondent to the bill, — but swore that he did not suppose that there was any impropriety in the attorney's also acting for the bank in its character of garnishee in the suit, as he had done in another suit brought by him, in which the bank was served as garnishee. The president and a director of the bank deposed also to the instructions to the cashier to retain the attorney in the business of the bank, and to his having subsequently transacted what law business the bank had; and that they relied on him to attend to their interests as garnishees in the suit in question.

On the other hand, the attorney deposed that he had no recollection of ever having been generally retained as the counsel for the bank, by the cashier or any other officer, and that he never charged the bank with such retainer, as he should have done, if he had understood that he was so retained; that he brought the suit for the respondent against Gardner & Brother, in which the bank was served, and acted openly and solely for the respondent in it, in court; and had no recollection of ever having been requested by the cashier or any other officer of the bank, to draw the affidavit of the bank as garnishee, or in any way to act for it on the suit; or of having any conversation with the cashier or other officer of the bank about the suit until after the judgment was obtained. He admitted that he had done business for the bank for which he had rendered his account; and explained his having drawn an affidavit for the bank as garnishee in a suit which he had commenced, by the fact, that the suit was that of the president of the bank, and that he had requested him to prepare the bank's affidavit as garnishee.

*W. H. Potter*, for the complainant.

Courts of equity have jurisdiction to grant new trials in actions at law, where, from accident or mistake, the party has been deprived of an opportunity of making his defence in a court of law. 1 S. & M. Ch. R. 466; *Joslin* v. *Coffin*, 5 How. (Miss.) 537; 1 A. K. Marsh. 237; Walker, Ch. R. 505; *Cochran* v. *Street*, 1 Wash. (Va.) R. 79. For what is accident, in the sense of a court of chancery, in granting new trials, see 1 Story, Eq. Jurisp. §§ 78, 109; and for what is mistake, Ib. §§ 110, 140, and notes.

Rhode Island Exchange Bank *v.* Hawkins.

*T. C. Greene & R. W. Greene,* for the respondent.

1. It is not within the power of a court of equity to grant the relief prayed for, in the case set forth by the plaintiffs' bill. The act of the general assembly making the garnishee, who fails to make affidavit, liable for the payment of the debt, is as binding on a court of equity as on a court of law. To relieve the garnishee from such liability is to alter a law of the general assembly, and is the exercise of legislative power in the form of a decree of a court of equity. See 2 Story, Eq. Jurisp. § 1326; *Gorman* v. *Low,* 2 Ed. Ch. R. 324; *Chandler* v. *Crawford,* 7 Ala. 506; *Peachy* v. *Somerset,* 1 Strange, 446; *Keating* v. *Sparrow,* 1 Ball & B. 367. No case can be found in which a court of equity has relieved after a statute liability or penalty, accrued on account of accident or mistake, but only when accrued through fraud. Example, statute of limitations. No case is produced by opposite counsel. 2 Story, Eq. Jurisp. § 1326.

2. The plaintiffs never retained an attorney to act in their behalf in the case of *Christopher Hawkins* v. *Benj. W. Gardner,* surviving partner of the firm of Gardner & Brother.

3. If they had retained an attorney it would be no ground for relief. The negligence of the attorney is the negligence of the client. *Patterson* v. *Mathews,* 3 Bibb, 80; S. C. 2 U. S. Eq. Digest, 367, § 45; *Burton* v. *Wiley,* 26 Verm. (3 Deane,) 430; *Wynn* v. *Wilson,* 1 Hemp. 698; S. C. 11 Am. Dig. 325, § 40; *Yates* v. *Munroe,* 13 Illinois, 212. A new trial ought not to be granted on account of the neglect of the agent or attorney applying for it. 3 U. S. Dig. 581, § 787, and cases cited; *Barry* v. *Wilbourne,* 2 Bailey, 91; *Leedom* v. *Pancake,* 4 Yeates, 183; *Hawley* v. *Blanton,* 1 Mis. 49; *McLane* v. *Harris,* Ib. 700; *Ditto* v. *Commonwealth,* 2 Bibb, 17; *Smith* v. *Morrison,* 3 A. K. Marsh. 81; *Green* v. *Robinson,* 3 How. (Miss.) 105; *Legrand* v. *Baker,* 6 Monr. 235; S. C. 2 Supp. U. S. Dig. 451, § 479; *Steigers* v. *Darby,* 8 Mis. 679; *Field* v. *Matson,* Ib. 686.

4. The failure of the bank to make their affidavit was caused by the carelessness and negligence of their own officers. The bank, like all other parties, is bound to know the law. Igno-

rance is no excuse. ' This rule applies with peculiar force to the plaintiffs. Boards of directors and cashiers have more means of knowledge than individuals. The affidavit required by law is a simple thing. It related to facts within their own knowledge and in their own books. Their statement would have been conclusive, unlike defences depending on the testimony of witnesses. According to their own account, they employed no one to draw their affidavit, and had no right to expect that he, whom they knew to be the attorney for the plaintiff, would àct for them.

AMES, C. J. The first objection to the relief sought by this bill is, that the court has no power to relieve a garnishee who has been prevented by accident from accounting upon oath, because this would be to relieve against a statute penalty, in derogation of the statute itself; in effect, to set up the decree of the court against a statute which was designed to bind it. The objection is founded upon a misconception of the statute relating to garnishment, of the ground upon which relief is here asked, and in the spirit in which it is urged, of the nature of equitable jurisdiction itself.

The statute of foreign attachment does not impose upon the garnishee the payment of the judgment recovered against the principal debtor, as a penalty for not disclosing the amount of the debtor's property in his hands at the time of the service, but proceeds upon the idea, that not disclosing, he *has* such property in his hands to the amount of the judgment; and if it does impose it as a penalty, the penalty attaches, as we shall presently consider, not upon mere non-disclosure, but upon the *neglect* or *refusal* to disclose. The bill does not seek relief as from a penalty or forfeiture, which is a distinct head of equitable jurisdiction, but is founded upon the well-known jurisdiction of the court over cases of accident and mistake; and asks the aid of the court because of an *accident* which has befallen the complainant, of which it is against conscience that the respondent should avail himself, even through the instrumentality of a court of law. In granting relief in such a case, the court, so far from contravening the statute, merely follows out its spirit and meaning, — acting, too, because, as a court of law, it was

powerless at the time this bill was filed, to do that which the equity of the statute required.

The statute provides, that if any person served with the copy of a writ as garnishee " shall *neglect* or *refuse* to render an account on oath as aforesaid of what personal estate of the defendant" he had in his hands at the time of the service of such copy, such garnishee shall be liable to satisfy the judgment that the plaintiff shall obtain against the defendant in such writ, to be recovered by a special action on the case.

The garnishee, who *by pure accident* has been deprived of his right to disclose in his own relief, can, with no more propriety, be said to have *neglected* or *refused* to account, than he who has been defrauded of his right. Now, the argument for the respondent concedes the power of the court to relieve a garnishee who has been defrauded of his right to disclose, as perfectly accordant with the statute ; and this is, logically, a concession of the whole objection.

It is equally *the law* which gives relief, in such a case, whether administered by a court of equity or by a court of common law; the partition of jurisdiction between the two tribunals, or, as here, between the two sides of the same tribunal, attributing to each its distinct remedial powers, according to a mere rule of custom or convenience. Had the complainant corporation been a *party* to the suit in which it was served as garnishee, or had our statute of new trials, formerly, as now, included *garnishees* with parties, as entitled to relief at the hands of a court of law from a judgment obtained by accident or mistake, the matter of this bill would have been properly the subject of a mere motion on the law side of the court. It is because this court decided upon such a motion, that it had no power under the statute of new trials, as it formerly stood, to relieve a garnishee who had not answered the suit in which he was served by opening the judgment so that he might account under oath, that a resort to the equity side of the court, in this case, became necessary ; and the garnishee here seeks relief, in equity, upon the same ground of accident and mistake, set down in the statute as good cause for the granting of a trial or new trial to a *party* by a court of law. We can see no reason, therefore, for jeal-

ousy of the court for exercising the same jurisdiction by their general powers, in one name, in favor of a garnishee, which they have been expressly authorized by statute to exercise under another, in favor of a party. In either case, the court should see that it did not exceed its powers ; but it would be difficult for it to see how the exercise of the same power, as a court of equity, was more to be feared, or more derogated from the just powers, or conflicted with the enactments, of the legislature, than when exercised by the court as a court of law.

It is hardly necessary, at this day, to discuss the settled right of a court of equity to enjoin the execution of, or proceedings under, a judgment at law, whether founded upon statute or common law, in order to administer equities, which the court of law, where the execution is sought or the proceedings are had, cannot notice. We have no occasion to open a controversy which has been settled ever since the time of James I., or to do more than to refer to the celebrated judgment of Lord Ellesmere in the *Earl of Oxford's case,* and to Mr. Hallam's account of the termination of the dispute upon this subject between Lord Ellesmere and Lord Coke. *Earl of Oxford's case,* 1 Ch. R. 1; S. C. *Comes Oxon.* v. *Neeth,* Toth. 126 ; 1 Hallam's Const. Hist. of England, 471, 472. Since that time, at least, the distinction between legal and equitable rights, and the jurisdiction of the chancery, where the former only are embodied in a judgment at law to prevent them from being wrested to purposes of injustice, has been universally acknowl-edged and approved, as but a mode of doing complete justice — the end of all tribunals, — and which supposes of course, due attention to all the rights of the litigants, by whatever name they may be called. The rule which governs upon this subject, both in England and in this country, cannot be better expressed than in the language of Chief Justice Marshall in giving judgment in the case of the *Marine Ins. Co. of Alexandria* v. *Hodgson,* 7 Cranch, 332 : " Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may be safely said, that any fact which clearly proves it to be against con-

science to execute a judgment, and of which the injured party could not have availed himself in a court of law, or *of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence of himself or his agents, will justify an application to a court of chancery.*" See 2 White and Tudor's Leading Cas. in Equity, Part 2, pp. 83–114, Hare and Wallace's notes to the Earl of Oxford's case, for a collation of English and American cases.

As the above rule supposes, it is a maxim of the chancery, and a very old one, that if a man comes to be remediless at the common law by his own negligence, he shall not be relieved in equity ; Broke's Abr. Conscience, pl. 23 ; 22 Edward 4, 6, b ; 4 Vin. Abr. Chancery, note 2 ; and if this were not so, our own statute would, as we have seen, by its very terms cut off a garnishee, *neglecting* to answer, from such relief.

Has, then, the complainant corporation been deprived of the power to answer as garnishee, in the suit at law mentioned in the bill, by pure accident or mistake ; or, as the remaining objection to relief in this case supposes, by its own neglect ; or, what is the same thing, the neglect of its officers or agents ; against the consequences of which, for the reason above given, this court cannot relieve ?

The accident or mistake set up by the complainants as a ground for relief, is, that an attorney, whom they had retained generally in their business, and who had advised them that they must make an affidavit, did not give them notice when to come into court to make it. They do not pretend that their cashier requested the attorney to draw their affidavit, or informed him what they had to disclose, or asked him when the disclosure was to be made, or even left with him, as significant of expected service, the copy of the writ of attachment. The proof submitted by them is, that their cashier, who by law is to make the affidavit, upon receiving from the attorney all the advice that he asked : to wit, that an affidavit must be made, took no step whatever to make it, — that having been told what his duty was, he relied, without any reason for the reliance, upon some one else, unasked, to inform him when to perform it. Admitting that the attorney who advised him was re-

tained generally in the business of the bank, which he denies, what right had the bank to expect that he would attend to business with which they had not charged him, and especially to draw an affidavit of facts which they had not disclosed to him? A general retainer merely gives a right to expect professional service when requested, but none which is not requested. It binds the person retained not to take a fee from another against his retainer; but to do nothing except what he is asked to do; and for this he is to be distinctly paid. The very case made by the complainants shows, therefore, that their cashier and agent, though advised what to do, neglected to take the proper and usual steps to do it. When to this is added, that before the time of accounting had expired, the cashier admits, that he knew that the attorney upon whom he relied was acting for the plaintiff in the suit, and, though thus put upon his guard, had no explanation with him, how can we say, that the difficulty in which the complainants find themselves arose from an accident or a mistake, in which, the neglect of themselves or of their agent bore no part? But upon the theory of the plaintiffs, that an attorney, actually retained by them, had by his negligent conduct in their business deprived them of a material advantage, how would they be advanced in a title to the relief of the court? *His* negligence, as that of their agent, would as much disentitle them to relief, as that of their cashier; their remedy, in either case, being in damages against him who by his neglect of duty had caused their loss.

We see no evidence of a fraudulent design of the attorney to obtain an advantage for his client, in this matter, at the expense of the plaintiffs; and, indeed, no such design or practice is charged in the bill. In the best view of the case for the plaintiffs which can be taken, there was a misunderstanding between their cashier and the attorney of the respondent, then plaintiff in the attachment suit, as to the attorney's acting also in the suit for the plaintiffs, who were garnisheed therein. As the result of the evidence, we can see no good reason why it should have been expected, whether he was generally retained for the plaintiffs or not, that he would, unless requested, act for them at all. He had answered, it is agreed, the only question

which was .put to him, and informed them of their duty; and was never called upon by them to do anything else towards their performance of it. We cannot look upon such a case as one of unavoidable accident, or of mistake unmingled with neglect; and must, therefore, in accordance with the settled rule which governs equitable action, as well as in obedience to the statute relating to foreign attachment, order this bill to be dismissed, with costs.