APPEL, (UNITED STATES v.) See Case No. 14,462.

## Case No. 497.

APPERSON et al. v. CITY OF MEMPHIS et al.

[2 Flip. 363.][1]

Circuit Court. W. D. Tennessee. March 31, 1879.

POWER OF THE FEDERAL COURT — LOCAL LAW — MANDAMUS — STATE COURT — CONSTRUCTION OF "MAY" AND "SHALL"—LAWS IMPOSING TAXES TO BE UNIFORM—SET-OFF.

1. This court has power to so control its process as not to violate the local law, and to prevent injustice to the tax-payer.

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

2. The state court can make no order or decree which shall interfere directly or indirectly with a mandamus issued from this court. This court not only has the power to pass upon all questions connected incidentally with the collection of the tax, (in question) but it is its duty to exercise that power in such a way as that no property justly subject to its burden shall escape liability, and that those who have honestly paid their obligations shall, as far as possible, be protected.

[See U. S. v. City of Memphis, 97 U. S. 284.]

3. The word "may" is not to be construed in all cases as "shall." The ordinary meaning of the language used in legislative acts must be presumed to be intended, unless it would manifestly defeat the object of the provisions.

[See Thompson v. Roe, 22 How. (63 U. S.) 434.]

4. While laws imposing taxes are required to be uniform, it is no objection to a tax that there is a want of uniformity in its application.

5. The general law is well settled that no set-off is admissible against demands for taxes, as they are not in the nature of contracts between party and party, but are the positive acts of the government through its various agents, binding upon the inhabitants, and to the making and enforcing of which their personal consent individually is not required. The fact that persons complaining were not parties to a suit out of which orders grew upon them to pay taxes, affords no ground to set such orders aside as to them.

[See U. S. v. Pacific Railroad, Case No. 15,983.]

6. It would seem that where the judgment on which a mandamus is founded has been reversed, the mandamus would fall also.

In equity. Demurrer to bill, which prayed for an injunction against the collection of a tax.

### Statement of Bill.

Complainants [Edward M. Apperson and others] are citizens of Shelby county, Tennessee, and property owners and tax-payers of the city of Memphis. Defendant Brown is a citizen of Iowa, and Rawlings and Shaper are tax collectors of the city of Memphis. By an act of the legislature passed November 24, 1866, the city of Memphis was empowered to lay Nicolson and stone pavement, etc., and to charge the entire cost of such improvements on the abutting property. By virtue of this act and in pursuance thereof, the city, by ordinance, provided for paving certain streets with Nicolson pavement and certain alleys with stone. Contracts were made by the city with certain firms to lay such pavements, and part of the work was done, when defendant Brown became the assignee of such contracts, and completed the work. In pursuance of the system adopted, bills were made out as the work progressed, against the owners of property abutting upon said improvements for the entire cost of the pavement to the center of the street in front of such lots, and payment thereof demanded of the owners. Under threats of suit complainants severally paid to Brown the entire cost of making said improvement in front of their several pieces of property, for which payment Brown gave

receipts in full, as against them, for their part of such improvements. Most of the citizens whose property was on these paved streets, resisted this mode of collection and assessment, and refused to pay. Numerous bills were filed against such by Brown, which were resisted in the courts, and in 1872 the supreme court of Tennessee declared that the act of the legislature of November 24, 1866, pretending to authorize the city to make the assessment by frontage to pay the cost of the pavement, was unconstitutional and void. After this decision, Brown, by a suit in this court against the city of Memphis, on the thirteenth of March, 1872, recovered judgment against the city for $488,993 for said work, from which judgment the city took an appeal to the supreme court of the United States, but being unable to give a supersedeas bond, the judgment stood in force pending the appeal. Upon the hearing of the appeal in the supreme court, the decree of this court was reversed in part and the cause remanded to this court, in which, on the fifteenth of March, 1875, a new decree was rendered in the sum of $292,133.47.

By an act of the legislature passed on the 18th day of March, 1873, it was enacted that "where an incorporated town or city has, by virtue of presumed authority to levy special assessments for specific purposes, levied and collected taxes or special assessments, the right to make which special assessment was afterward declared void by the supreme court of the state, said town or city shall have power to levy a tax, in addition to all other taxes allowed by law to be levied, sufficient to cover the entire cost of the improvement, with interest thereon, for which said special assessments were illegally made. And in the levying of such additional tax authority is hereby given to such town or city to allow as valid payments on such additional tax any sum or sums, with interest, paid by persons in satisfaction, or in part satisfaction, of said special assessments illegally levied and collected as aforesaid." After the passage of this act, on the 24th of June, 1873, a writ of mandamus was granted against the city, commanding it to levy a tax to pay Brown's then existing judgment of $488,993, the city having taken an appeal without a supersedeas. This was the first mandamus, and was predicated upon the aforesaid act of 1873. In pursuance of this act, the general council of the city of Memphis passed an ordinance to provide for the issuance of certificates of indebtedness to all persons who had paid assessments, which certificates provided upon their face that they should be receivable in payment of any tax levied to cover the entire cost of the Nicolson pavement. In pursuance of this mandamus of June 24, 1873, the city of Memphis levied a tax of seventy cents on each one hundred dollars worth of taxable property to pay Brown's said judgment. For 1874, without mandamus, the city levied a tax of thirty cents, for the same judgment, voluntarily, upon all the taxable property of the city, including the property of these complainants, and sought to collect the same in money. On the 22d of March, 1875, the act of March 18, 1873, was repealed, and upon the same day Brown filed in this court a petition for an alternative mandamus against the city, claiming a balance of $292,133.47, found to be due him by the decree of March 15, 1875, and praying that the city be required to levy a tax each year, for '75, '76 and '77, sufficient, after allowing for errors, delinquencies, insolvencies and defaults, to realize $125,000 each year. The answer of the city was filed, and on the 28th of June, 1875, a peremptory mandamus was issued. On the 9th of February, 1876, the city filed a return to the peremptory writ, presenting sundry excuses for not promptly obeying such writ, and submitting certain legal questions to the court for its decision, for its own guidance in levying a tax. Among other questions were the following: First. Whether those lots upon which the frontage tax had been paid were exempt? Second. Whether the ninth and tenth wards, which had been taken into the city after the contracts with Brown's assignors, were exempt? Third. Whether the capital of merchants should be included in the levy as subject to such tax? On March 2, 1876, upon due consideration of the matter set forth in said return of February 9, and the affidavit of Brown filed upon March 1st, the court adjudged the ninth and tenth wards and the property upon which the assessments had been paid, exempt, but held the merchants' capital liable, and ordered an alias writ, commanding a levy of an additional tax, sufficient, excluding the exempted property, to pay the residue of Brown's judgment. From these orders appeals were taken to the supreme court of the United States, where such orders were afterward affirmed and are still in force.

The bill of complainants now filed, sets forth that they are the owners of lots in front of which pavements were laid and the cost thereof paid to Brown and for such sums, thus collected, Brown gave receipts in full satisfaction of the cost of the pavement in front of the lots designated. It claims that, independently of the judgment of March 2, 1876, in the mandamus proceedings, Brown is estopped from demanding additional tax on said property. The frontage tax was necessarily larger than the pro rata share of the particular property would be in a general tax, because, by the frontage tax, the whole cost of the pavement was imposed on a small portion of the property in the city, while a general tax would cover the whole; hence, in any contingency, those who paid the frontage tax have paid more than their just share of the entire cost of the pavement. The bill further claims that the act of March 24, 1873, was the only authority granted by the legislature to the city to levy

a tax for the payment of the cost of the pavement, and that under this act the power granted was to levy a tax sufficient to cover the entire cost of the pavement, with interest thereon, and coupled with this power, was also the authority and duty to allow, as valid payments on such additional tax, any sums with interest, paid by persons in satisfaction of such special assessments illegally levied and collected. To the mandamus proceedings none of these complainants were parties, and hence are not estopped by the judgment to deny the liability of their property. It is charged that in pursuance of the act of 1873, the city took steps, by ordinance, to issue certificates, and to protect those who had paid frontage tax from further taxation; but in spite of this the collectors are claiming to collect again this tax from the complainants, and they are instigated thereto by the demands and threats of Brown. For 1876, the city, in conformity to the judgment of this court of March 2, considered the ninth and tenth wards, and the property which had paid the frontage tax assessment, as exempt; but as it was impracticable in making the tax books, to exclude this property, which was taxable for other purposes, the mandamus tax was put upon all the property without distinction, but the rate was fixed so high, that the amount to be realized in money would cover the amount demanded by the mandamus, after allowing those who had paid the frontage assessment to pay the tax on that particular property in Brown's receipts or paying certificates. Still the tax collectors are pressing the collection in money against the exempted property. The bill further sets forth that the city is insolvent; that the tax collectors, if not insolvent, have property of little value, and wholly inadequate to answer complainants' demands. That, by the laws of Tennessee, taxes are a lien upon property, and constitute a cloud upon complainants' lots, and unless restrained, such officer will proceed to sell the property for payment of taxes; that the attempt to collect such taxes, and especially the actings and doings of Brown, are a fraud upon the complainants and upon the court; that some of the complainants hold the receipts of Brown for the payment of the front foot assessments, and some of the scrip of the city, issued in exchange for his receipts. Complainants have tendered and offered to surrender a sufficient amount of such receipts and scrip to cover their respective taxes, and desire to enjoin the collection of all such taxes in money. Complainants pray that the city and its officers be enjoined from collecting from said complainants any part of the mandamus taxes on their property, described in the exhibits to the bill, and that the right of complainants to satisfy and discharge the mandamus tax, levied or to be levied, on any of their lands in the city, by the payment of said receipts or scrip to the amount of the money originally paid by each of them on frontage assessments, be declared and established.

To this bill Brown interposes a demurrer for want of equity upon the ground: First. That the front foot assessments paid by the complainants were voluntary payments, and the only remedy the complainants have for a recovery of the amount so paid is against the city. Second. That the act of March 18, 1873, under which the complainants claim the right to pay in Brown's receipts or scrip issued in exchange therefor, was repealed before the taxes complainants are seeking to enjoin were levied or ordered by the court to be levied. Third. That the decree of the state court in favor of Bethel and others, enjoining the collection of the taxes levied under the mandate of this court, was void for want of jurisdiction in the state court to pronounce the same, and cannot be relied upon as a ground of relief here. Fourth. That the constitution of Tennessee requires that all property shall be taxed, and that taxation shall be equal and uniform, and the fact that the tax is required to be levied, requires that it be levied upon and collected from the property of the complainants as well as others. Fifth. That the judgment of March, 1875, decided that all the questions made by the appeal adversely to the complainants, and this court cannot now make a decree inconsistent therewith. Sixth. That the taxes complainants here seek to be relieved from were not levied under the order of March 2, 1876, but under the judgment of March 30, 1875, and no right to relief from such taxes can be based on the order of March 26, 1876. Seventh. That the complainants have by law no right to set off claims due them by the city, against the taxes levied by the city under the mandate of this court. Eighth. If the complainants have any equity at all, such equity extends no further than to the particular piece of property owned by any complainant, on which the assessment by the front foot was in fact paid, and such equity is in no sense personal or restrictive of the personal obligation of the person who made the payment, and the bill does not show whether or not all the property on which the taxes sought to be enjoined have been levied is property on which the frontage assessments have been paid. Next, the bill shows that some of the property on which the taxes are sought to be enjoined was never assessed for the cost of the pavement.

Meriwether and Myers & Sneed, for complainants.

Wm. M. Randolph, for defendant Brown.

BROWN, District Judge. No doubt is entertained of the power of this court to control the execution of its process in such a manner that no local law be violated and no injustice be done to any particular taxpayer. Clearly no power exists in a state

court to make any order or decree which shall interfere directly or indirectly with this mandamus, and unless the power is vested with us the tax-payer will be remediless. This was the view taken by the supreme court of Tennessee in Lea v. City of Memphis, [9 Baxt. 103,] by the supreme court of the United States, in City of Memphis v. Brown, [97 U. S. 300, affirming Case No. 9,415;] and also by Judge Emmons, in Brooks v. City of Memphis, [Case No. 1,-954,] where the question of the taxability of merchants' capital for these assessments was fully considered. Not only has this court the power to pass upon all questions connected incidentally with the collection of this tax, but it is our duty to exercise that power in such a way that no property justly subject to its burden shall escape that liability, and that those who have honestly paid their obligations shall, as far as possible, be protected. Acting upon this theory, the order of March 2, 1876, was made, exempting the property upon which the assessment had been paid, and no reason is now perceived why that order should not apply to all writs of mandamus issued from this court for the collection of this tax, whether such writs were issued before or since the making of such. The payment of these assessments having been voluntary, perhaps it would be difficult to justify this order upon technical principles of law without trenching upon another maxim—that all taxation must be uniform. But without touching upon this question, the order was upheld by the supreme court upon the ground that it was exactly the order which Brown had asked for, and that he could not be heard to complain of it. The case certainly presented the strongest possible equities for the exemption of the property in question. But we are now asked to go further (and that is the main question in the case) and exempt not only the property upon which the front foot tax was paid, but all other property of the owner to the amount of Brown's receipts or the city scrip still in his hands, so far as there is a balance still remaining unapplied to the payment of the frontage assessment upon his paved lot. It is argued that the only authority to impose this tax is derived from the act of March 18, 1873, and that by this act, the city was required to allow as valid payments, any sums so paid in satisfaction of special assessments. It will be observed that this act did not in terms exempt such property from assessments, for that might have laid the tax open to the charge of want of uniformity. But it sought to bring about the same result by permitting Brown's receipts to be taken in payment. The act evidently contemplated that a tax should be laid sufficient to cover the entire cost of the improvement, including the amounts already paid by way of special assessments; in which case, the allowance of these amounts, so paid, would still leave enough to pay Brown the balance due him. Indeed, the certificates of indebtedness issued under the provisions of the ordinance of June 29, 1873, passed in accordance with the above act, provided upon their face that they should be receivable only in payment of any tax that might be levied by the city of Memphis to cover the entire cost of laying the said pavements. This course, however, was not pursued. A tax was laid sufficient simply to pay Brown the residue of his claim. Of course, he was entitled to payment in cash, and, if his receipts or city scrip were taken in liquidation of the amounts, he would realize little or nothing upon his rights. It is true, that where the course contemplated by the act was pursued, permission was given to allow the special assessments as payments, but I do not understand that the legislature absolutely required this to be done, or that the general council intended it to be done, unless a tax was laid sufficient to cover the entire cost of the improvement. It is not true that in all cases the word "may" must be construed as "shall." The principle adduced from the modern cases is that that exposition ought to be adopted in this case as in other cases, which carries into effect the true intent and object of the legislature in the enactment; the ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions. Sedg. St. Law, p. 439; Minor v. Mechanics' Bank of Alexandria, 1 Pet. [26 U. S.] 46, 64; Mason v. Fearson, 9 How. [50 U. S.] 248, 250. In this case, if the course marked out by the statute had been pursued, and a tax had been laid to cover the entire cost of the improvement, I should have found little difficulty in holding that the city was bound to credit the special assessments; but, where such construction would defeat the object of the writ, a different rule should be applied. This seems to have been the view adopted by Judge Trigg, in his opinion of August 23, 1877, enjoining the defendants Rawlings and Shaper from collecting anything but money in payment of this tax. While laws imposing taxation are required to be uniform, it is no objection to a tax that there is a want of uniformity in its application. For instance, a tax of twenty-five dollars is imposed upon all retail dealers in liquors. The tax is uniform, but it bears ten times heavier upon one who only does a business of a thousand dollars a year, than upon one whose sales amount to ten thousand dollars. "It is only where statutes are passed which impose taxation on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any sense proportionate in their effect on those who are to bear the public charges." Cooley, Tax'n, 127. In the imposition of taxes upon real estate great inequalities fre-

quently occur in the assessment and valuation, beyond the reach of the legislature or courts. If the collection of these mandamus taxes could be so arranged that every tax-payer holding Brown's receipts or city scrip, could use them in payment, all would receive a like benefit; but, as has already been shown, this is now impracticable, owing to the fact that the tax was laid only sufficient to cover the balance due him upon his contracts. But to permit one to avail himself of this privilege, and to deny it to another, is to produce inequality rather than uniformity. To illustrate: A owns two lots; in front of one the pavement was laid and the assessment paid. In paying this assessment A paid one thousand dollars more than he would have paid on this lot had a general tax been laid over the whole city; he now asks that the tax now laid upon his second lot may be paid with city scrip to the amount of the thousand dollars overpaid upon the first. Upon the other hand, B owns but one lot, upon which he has paid an assessment greater by one thousand dollars that he would have paid if a general tax had been laid, but having no other property, he can only look for his thousand dollars overpaid, to the responsibility of the city. The general tax-payers, then, are called upon to make up the thousand dollars held by A in scrip, and not that held by B, simply because A happens to own another lot. I think the liability of the general tax-payers should not depend upon an accident of this kind, but that all parties holding city scrip of this issue should be placed on an equality and required to look to the city for payment. Leaving out of view the act of 1873, there seems to me no reason for holding that complainants are entitled to set off assessments illegally but voluntarily paid. The general law is well settled that no set-off is admissible against demands for taxes, as they are not in the nature of contracts between party and party, and are the positive acts of the government through its various agents, binding upon the inhabitants, and to the making and enforcing of. which their personal consent individually is not required. M'-Cracken v. Elder, 34 Pa. St. 239; Peirce v. City of Boston, 3 Metc. [Mass.] 520; Cooley, Tax'n, pp. 13, 14. In Fremont v. County of Mariposa, 11 Cal. 361, it was held directly that equity will not relieve from a tax on the ground that an illegal tax was collected of the complainant in former years. The fact that complainants were not parties to the original suit or to the proceedings which culminated in the orders of March, 1875 and 1876, does not confer upon them the right to object to these orders or set them at naught. State Railroad Tax Cases, 92 U. S. 575. I see no authority for collecting taxes levied for 1873–4. The judgment upon which the mandamus for their collection was based was afterwards reversed by

the supreme court of the United States, and a new judgment taken in 1875 for the balance remaining due to Brown. The mandamus was in the nature of an execution and when the judgment was reversed and held for naught, it would seem the mandamus must fall with it. But as this point was not made by defendant Brown in his brief, I am quite willing to reconsider it if I have overlooked any material fact in this connection. I think the complainants are entitled to an injunction against the collection of the tax for 1873 and 1874, and also against the collection of any tax for this pavement upon property in front of which the pavement was laid and the assessment paid, but as to all other property the demurrer is held good. Counsel will prepare the proper order and submit it to me for signature.

NOTE, [from original report.] The decision of Judge Emmons (referred to) in Brooks v. City of Memphis [Case No. 1,954] laid down several important propositions, among others these:

"When a contract has been made with a municipal corporation, and the work performed by the contractors, who relied upon a certain mode of taxation, which the supreme court declared unconstitutional, and the legislature afterwards pass a law to take the place of the invalid law, under which a judgment is had and a mandamus applied for, when this latter law is repealed; the court will disregard the repeal and apply the same rule as though it was in full force when the contract was made.

"The legislature has no power to repeal the only adequate remedy to enforce an existing judgment, unless some other reasonable mode of enforcement is provided. And this is so by virtue of the provision in the state constitution, which declares that 'no retrospective law, or law impairing the obligation of contracts should be passed.' And although there may be a statutory limitation upon a corporation's general power of taxation, yet, where there has been an express grant of power to such corporation to contract a debt, a power of taxation for its payment will be implied.

"The federal courts will sometimes delay judgment to await decisions in state courts, but where there is a mandamus to enforce the payment of a final judgment in a case where a tax to be collected had been levied according to the common usage of the state, and no objections have been raised to the lawfulness of the tax in other cases, or as to the taxes levied for other purpose—such a course will not be followed."