STATE OF NORTH DAKOTA EX REL. CHARLES A. STEARNS, Relator and Plaintiff, v. OBERT A. OLSON, as Treasurer of the State of North Dakota, and as Custodian of the North Dakota Workmen's Compensation Fund, Defendant and Respondent.

(175 N. W. 714.)

**Officers — Workmen's Compensation Act — state treasurer as custodian of funds — special fund.**

1. Under the Workmen's Compensation Act the state treasurer is made custodian of the fund which is accumulated in the manner prescribed by law for the payment of claims allowed by the workmen's compensation bureau. *Held,* that such fund is a special, and not a public, fund.

**Officers — duty of state treasurer to pay drafts from workmen's compensation fund.**

2. When a claim has been presented to the workmen's compensation bureau by one who claims benefits under the Workmen's Compensation Act, and such a claim has been determined by the bureau, and a definite amount awarded the claimant, the bureau, under the provisions of the act, may draw its voucher, or in this case its voucher-warrant, against the treasurer as custodian of such fund, directing the state treasurer, as custodian of the fund, to pay the claimant the amount stated in the voucher-warrant.

**Officers — state auditor has no authority to issue warrants in payment of award by workmen's compensation bureau.**

3. Under said act, the state auditor has no authority to issue a warrant for the payment of any award made by the workmen's compensation bureau.

Opinion filed October 25, 1919.

Application to the Supreme Court of North Dakota for a writ of mandamus.

Writ ordered issued.

*William Lemke* and *L. J. Wehe,* for relator and plaintiff.

*William Langer,* Attorney General, and *F. E. Packard,* Assistant Attorney General, for defendant and respondent.

GRACE, J.   This is an application to this court by one Charles A. Stearns for a writ of mandamus, directing the state treasurer as custodian of the workmen's compensation fund to pay the relator the sum of $37.33, the amount of a voucher-warrant issued to him by the North Dakota workmen's compensation bureau.

The petition for the writ, in substance, shows that the relator is of lawful age and a resident of the city of Bismarck, Burleigh county, North Dakota. That the sixteenth legislative assembly of the state of North Dakota enacted a law commonly known as the North Dakota Workmen's Compensation Act, which was approved by the governor on March 5, 1919; that defendant is the state treasurer of North Dakota and custodian of the North Dakota workmen's compensation fund; that the relator is entitled to certain benefits arising out of and under the provisions of said act; that on the 14th day of August, 1919, the relator became entitled to compensation by an award made by the North Dakota workmen's compensation bureau; that it became the duty of said

bureau to disburse to the relator compensation from the North Dakota workmen's compensation fund in the sum of $37.33; that pursuant to the act, the said bureau authorized, prepared, issued, and delivered to the relator, Charles A. Stearns, voucher-warrant No. 1 for said sum, as compensation which the relator was entitled to receive; that the fund out of which said compensation should be disbursed to the relator by said bureau is in the possession of the defendant, and is sufficient in amount to pay the relator the amount designated in the voucher-warrant, and that it is the duty of the defendant to pay the same; that the relator presented to the defendant said voucher-warrant on or about August 16, 1919; demanded payment of it out of said fund, which the defendant refused.

The matter came on for argument before this court; the defendant made no return to the order to show cause why the writ should not be issued, but did present a motion to dismiss the proceedings. The question presented is a very narrow one. It is as follows: When a claim has been presented to the workmen's compensation bureau by one who claims benefits under the Workmen's Compensation Act, and such claim has been determined by the bureau, and it being further determined that the claimant is entitled to receive a certain sum of money as benefits under said act, and the bureau draws its voucher-warrant as in this case, which is duly signed by the North Dakota workmen's compensation bureau by the chairman and commissioners thereof, directing the state treasurer to pay to the claimant the amount stated in the voucher-warrant, should such warrant be honored and paid by the state treasurer from the funds in his possession for that purpose, or should such voucher-warrant first be presented to the state auditing board and by it approved, and a warrant issued therefor by the state auditor, which shall show the approval of the auditing board in the customary manner.

Section 83, Constitution of North Dakota, reads thus: "The powers and duties of the secretary of state, auditor, treasurer, superintendent of public instruction, commissioner of insurance, commissioners of railroads, attorney general and commissioner of agriculture and labor shall be as prescribed by law."

The state auditor's duties are prescribed by § 132, article 4, Comp. Laws 1913. It is not necessary to insert in this opinion a statement of those duties as defined in said section. It is sufficient to state that his

duties, as therein prescribed, largely relate to what may be termed "public money," which belongs to the state. He is, in common language, the bookkeeper of the state's finances. Among other duties prescribed by subdivision 10 of § 132 may be mentioned the following: "To audit all claims against the state, the payment of which is authorized by law." And also subdivision 7 of the same section, which reads as follows: "To keep an account of all warrants drawn upon the treasurer, and a separate account under the head of each specific appropriation, showing at all times the unexpended balance of such appropriation."

Subdivision 14 of the same section reads as follows: "To inspect, in his discretion, the books of any person charged with the receipt, safekeeping or disbursement of public money," and § 15: "To require, at such times and in such forms as he may designate all persons, who have received money or securities or who have had the disposition or management of any property of the state of which an account is kept in his office, to render statements thereof to him, and all such persons must render such statements when so required by said auditor."

Section 186 of the Constitution of North Dakota reads thus: "No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or other political subdivision, shall be audited, allowed or paid until a full itemized statement in writing shall be filed with the officer or officers, whose duty it may be to audit the same." The money referred to in said section is money belonging to the state, which has been accumulated in the treasury as public funds, which are to be used in carrying on the state government. It means such money as is raised by taxation, or which has accumulated in the treasury by the payment of fees authorized by law to be charged for various purposes, or any manner which would constitute such money a public fund of the state. The auditor's duties relate to the public funds of the state.

Section 375, Comp. Laws 1913, as amended by chapter 227, Session Laws of 1915, provides who shall be members of the auditing board, and prescribes their duties. Among other things, it is provided: "It shall be the duty of the state auditing board to audit all claims, accounts, bills or demands against the state, except such as are now specifically

excepted by law. Each and every claim, account, bill or demand against the state, paid by the state auditor, shall bear the approval of the state auditing board, and the state examiner shall hold the state auditor per- sonally responsible for the sum of any or all bills paid by the state auditor which do not bear the approval of the state auditing board."

The duties of the state auditor and of the auditing board relate to the disbursement of public funds. The act of the sixteenth legislature of North Dakota, creating the workmen's compensation fund, contains, among others, the following provisions: Section 6. "Every employer subject to this act shall contribute to the North Dakota workmen's compensation fund in proportion to the annual expenditure of money by such employer for the service of persons subject to the act."

Section 10. "The workmen's compensation bureau shall disburse the workmen's compensation fund to such employees of employers as have paid into the said fund the premiums applicable to the classes to which they belong, who have been injured in the course of their employment, wheresoever such injuries have occurred, or to their dependents in case death has ensued, etc."

Paragraph 1 of § 13 of the act is as follows: "The state treasurer shall be the custodian of the workmen's compensation fund and all dis- bursements therefrom shall be paid by him upon vouchers authorized by the workmen's compensation bureau."

Paragraph 3 of the same section provides that the "state treasurer shall give a separate and additional bond in such amount as may be fixed by the governor, and with sureties to his approval, conditioned for the faithful performance of his duties as custodian of the workmen's compensation fund."

Section 17 provides "the bureau shall have full power and authority to hear and determine all questions within its jurisdiction, and its deci- sion thereon shall be final."

Section 17 further provides that, in an appeal to the district court upon the grounds in said act stated permitting an appeal, "any final judgment so obtained shall be paid by the workmen's compensation bureau out of the workmen's compensation fund in the same manner as awards are paid by such bureau."

Section 7 of the act requires the bureau to maintain the solvency of the workmen's compensation fund at all times; and it is further re-

quired to create and maintain a reasonable surplus, after the payment of legitimate claims, for injury and death that it may authorize to be paid from the North Dakota workmen's compensation fund for the benefit of injured and the dependents of the deceased employees. The bureau, by the same section, is required to keep accurate accounts of the money paid in premiums by each of the several classes of occupations or industries, or the disbursements on account of the injury and death of employees; and it shall also keep an account of the money received from each individual employer and the amount· disbursed from the workmen's compensation fund on account of injuries and death of the employees of such employer.

Section 27 of the act provides for an appropriation of $50,000, or as much thereof as may be necessary, out of any funds in the state treasury not otherwise appropriated, to put into effect the provisions of the act, and further provided that the workmen's compensation bureau shall reimburse the general fund of the state out of the workmen's compensation fund for all money appropriated, expended, or disbursed on behalf of said bureau. It would seem that the act creating the workmen's compensation fund is so very specific and clear upon the issues involved in the application for the writ that a construction of the same in this regard would be superfluous. It is perfectly clear that the workmen's compensation fund is no part of the state fund, and is, in no sense, public money. It is a special fund accumulated by the collection of annual premiums from employers, the amount of which is determined and fixed by the workmen's compensation bureau for the employment or occupation operated by such employer, and determined further by the classification rules and rates made and published by the bureau. When the fund is accumulated, the state treasurer is, by the provisions of the act, made the custodian of it. The legislature, if it had thought it wise, could have designated the commissioner of agriculture and labor or the commissioner of insurance, or other public officer, as custodian of the fund. It might, perhaps, if it deemed it wise, have designated a trust company or responsible banking institution, or any other responsible financial agency within the state as custodian; this upon the grounds that such funds are not public funds, but is a special fund, and, in a sense, a private fund as contradistinguished from a public fund in the sense that it is collected from not all the people of the state by way of

taxation, but from certain individuals, corporations, associations, etc., of the state engaged in conducting certain occupations and employments denominated in the act; the purpose of the collection of the same into a special fund is to compensate for a definite length of time, depending on the character of the injury, employees who received injuries while engaged in such employment for employers who have paid the premiums assessed against them into such fund.

The workmen's compensation fund is a special fund, and is not a state fund. Hence, the legislature had the authority to designate such public officials as to it seemed proper, and impose upon them the duty of disbursing such fund in accordance with the provisions of the law, and had authority to prescribe the manner of the disbursement, as by vouchers, warrant, etc. The fund not being a public one, the state auditor would have no authority to draw warrants thereon, unless specifically authorized so to do by the law under the provisions of which the fund is accumulated, or the manner of disbursing the fund is specifically provided for in paragraph 1 of § 13 of the act, which is above set forth. The legislature had authority to provide for the disbursement of the fund in that manner, and the same is neither illegal nor unconstitutional. State ex rel. Olson v. Jorgenson, 29 N. D. 173, 150 N. W. 565; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583; State ex rel. Beebe v. McMillan, 36 Nev. 384, 136 Pac. 108.

The construction contended for by the defendant, to wit, that after the bureau had determined a claim which had been presented to it, and found the amount of compensation to which the claimant was entitled, then it would be a mere clerical act on the part of the state auditor to draw a warrant in payment of the same, is in no sense tenable. The auditor could not draw such warrant unless the claim be first approved by the state auditing board. Thus, under this contention, after the determination on the claim by the bureau, it would have to go before the state auditing board and be approved by it before the state auditor could draw a warrant in payment of the claim. If such were the requirement of the law, it would be practically unworkable. Such a condition would probably result in interminable disagreement between the bureau and the state auditing board; such a condition is not contemplated nor intended by the law. The state auditing board has nothing to do with

43 N. D.—40.

any of such claims as may be properly presented to the bureau; neither has the state auditor. The jurisdiction to hear and determine such claims is, under the law in question, placed with the workmen's compensation bureau, and its powers and duties are thoroughly prescribed in the act creating it.

The method of disbursements by it, and the manner of the payment of its awards, is provided for in the act. The method adopted for the payment of awards by the board is what is termed a voucher-warrant, consisting of a voucher and also a warrant attached together, and which, according to the requirement in the warrant, must be presented for payment in such attached condition to the custodian of the fund. This, it would seem, is a substantial compliance with the requirements of the act itself, and it is so held.

The writ of mandamus applied for should be issued direct to the said Obert Olson as state treasurer, commanding him to forthwith pay to the said Charles A. Stearns the sum of $37.33, which is the amount of said voucher-warrant which said Obert Olson has heretofore refused to pay.

Let the writ of mandamus issue.

BRONSON and BIRDZELL, JJ., concur.

CHRISTIANSON, Ch. J. (concurring specially). This is an application for a writ of mandamus to compel the defendant state treasurer to pay the claim of an injured employee, which claim has been duly audited and vouchered by the workmen's compensation bureau. The sole question presented and argued is whether the workmen's compensation bureau has the power to draw a voucher or warrant upon the state treasurer in payment of such claim; or whether such a warrant should be drawn by the state auditor. No question has been raised as to the jurisdiction of the court. And it appears that the controversy affects every claim for indemnity which has arisen under the Workmen's Compensation Act; and that a large number of claims are unpaid by reason of the controversy as to who is authorized to draw warrants in payment of such claims.

I agree with the majority members that the legislature intended to confer authority upon the workmen's compensation bureau to draw

warrants or vouchers directly upon the state treasurer in payment of claims for death or injuries audited by the bureau.

ROBINSON, J. (dissenting). I dissent from the opinion ordering that a writ of mandamus should issue to the state treasurer to compel him to pay $37.50 on the order of the workmen's compensation bureau. Though the bureau has collected a large sum of money and deposited the same in the state treasury, it is certain that in making the collections the bureau exceeded its authority. According to the plain words of the statute the bureau had no right to make any collection without first making and publishing a classification of hazards and a schedule of rates, and such a schedule has never been made or published. It is true the bureau did buy from an alleged actuary a schedule of about 1,400 different rates, and paid therefor, with some advice concerning the same, $5,100 but the lumbersome schedule pertains to every occupation in the United States. It was never made for the state of North Dakota; it has never been published, and the bureau made a written agreement to keep the same secret, "and to hold all actuari formuli in confidence for him," his purpose being to sell it over and over again to innocent parties in other states, because such a document will answer for one state as well as another. If such a rate sheet had been published, it would not have been a compliance with the statute, because a party should not have to look over a haystack to find a grain of wheat; he should not have to read over such a lumbersome document to find the rate chargeable against him.

Then there has been, and there still is, a serious question concerning the constitutionality of the compensation statute. If its purpose was to authorize the board to fix and determine compulsory, absolute, and incontestable rates, then the statute is clearly unconstitutional. It can only be sustained on the ground that the rates must be just and reasonable, and that every party claiming that a rate against him is unjust and arbitrary may, on that ground, defend against it in a suit for its collection.

The writ of mandamus should issue only to compel the performance of a specific and plain duty. Hence the writ should be denied.