STATE OF NORTH DAKOTA on the relation of the North Dakota
Workmen's Compensation Bureau, Joseph A. Kitchen, Chairman,
S. A. Olsness, S. S. McDonald, Philip Elliot, and L. J. Wehe, Com-
missioners, Supply Department of the State Board of Administration
and Hiram Landers, Appellants, v. JOHN STEEN, Treasurer of
the State of North Dakota and as custodian of the North Dakota
Workmen's Compensation Fund, Respondent.

(189 N. W. 247.)

**States — bills for supplies and expenses of traveling auditor incurred by
Workmen's Compensation Bureau must be audited by state auditing
board.**

Bills for supplies and for expenses of a traveling auditor incurred
by the Workmen's Compensation Bureau must be audited by the State
Auditing Board pursuant to the provisions of ¶ "D," chap. 145, Laws 1921
and the general law applicable.

Opinion filed June 30, 1922.

Action in District court, Burleigh county, *Nuessle, J.,* for a peremp-
tory writ of mandamus. The complainant has appealed from an order
sustaining a demurrer to the petition.

Affirmed.

*C. A. Marr,* for appellants.

*Sveinbjorn Johnson,* Attorney General, for respondent.

BRONSON, J.  The Workmen's Compensation Bureau seeks to compel
the State Treasurer to pay a voucher for supplies and a voucher for
expenses of its traveling auditor. These vouchers were audited by the
Bureau. The State Treasurer refused payment for the reason that they
had not previously been audited by the State Auditing Board. The
Bureau has appealed from the order of the trial court sustaining a demur-
rer to its petition.

The sole question presented is whether bills for supplies and for ex-
penses of a traveling auditor incurred by the Compensation Bureau must
be audited by the State Auditing Board.

In the case of State ex rel. Stearns v. Olson, 43 N. D. 619, 175 N. W. 714, this court held that an allowed claim for injuries received by an employee did not require auditing by the State Auditor or the State Auditing Board before payment by the State Treasurer.

In this case it is not contended that such decision of this court was erroneous or that such allowed claims of injured employees should be audited by the State Auditing Board. It is, however, maintained that claims for salaries and all other expenses, under the law, of the Bureau, must and should be audited by the State Auditing Board.

Chap. 145, Laws 1921, ¶ D, provides:

"The salaries and compensation of the members of the Bureau, of the secretary and all actuaries, accountants, inspectors, examiners, experts, clerks, physicians, stenographers and other assistants, and all other expenses of the Bureau herein authorized, including rent for offices of the Bureau, and the premium to be paid by the State Treasurer for the bond to be furnished by him, shall be audited and paid out of the workmen's compensation fund and the appropriation herein made in the manner prescribed for similar expenditures in other departments or branches of the state service, provided, however, the same shall not exceed in any year the sum of fifty-five thousand dollars ($55,000.00)."

This same provision is contained in the original law, chap. 162, Laws 1919, excepting the words "including rent for offices of the Bureau" and excepting that the sum of $55,000 theretofore was $50,000. When the decision was rendered in State v. Olson, supra, the then existing law made it the duty of the State Auditing Board to audit all claims, accounts, bills, or demands against the state except such as were not then specifically excepted by law. Chap. 227, Laws 1915. Thereafter, in December, 1919, a special session of the legislature amended such law by inserting therein "except those of state-owned utilities, enterprises, and business projects."

Chap. 151, Laws 1919, provides that the Industrial Commission is empowered to manage, etc., all utilities, industries, enterprises, and business projects undertaken, etc., by the state except those carried on in penal, charitable, or educational institutions.

Pursuant to the specific provisions of ¶ D, is an audit required by the State Auditing Board? In terms, stripped of verbiage, the act provides that all expenses of the Bureau shall be audited and paid out of the fund in the manner prescribed for similar expenditures in other departments

or branches of the state service.   If ¶ D had not been enacted, it might be conceded that the Compensation Bureau would have authority to audit its own disbursements out of the special fund over which the Bureau has control.   The apparent purpose of ¶ D is to provide a check on official disbursements.   In the re-enactment of the law in 1921, the legislature, if it had desired to specifically restrict the provisions of ¶ D to the powers and duties of the Bureau, could have readily so done.   In the special session of 1919 it was specifically legislated that the powers of the State Auditing Board should not apply to state-owned utilities, enterprises, and business projects.   It used, in so restricting the powers of the State Auditing Board, the same words of exception concerning such powers which in a previous statute were used concerning the Industrial Commission. The provisions contained in ¶ D seem to be peculiarly applied to the Compensation Bureau.   Such specific provisions evidently have not been applied to the Industrial Commission (chap. 151, Laws 1919), state mill and elevator (chap. 152, Laws 1919) home building (chap. 150, Laws 1919), or the experimental creamery fund (chap. 149, Laws 1919).   The original purposes of the statute were not changed  by  its  re-enactment through ¶ D of chap. 145.   It was competent for the legislature to impose upon the State Auditing Board, as well as upon the State Auditor, duties of auditing claims, although the same might not be conceded or determined to be claims against the state, but merely upon the special fund.   The language used in this act is subject to the fair construction that it imposes duties upon state agencies required by the general law to audit claims.   Such construction fulfills the fundamental purposes underlying an audit.   Such construction does no violence to any legislative intent expressed in the law or in the cognate law.   Such construction, following the language used, employs the usual and well-established agencies required in the presentation, allowance, and payment of claims.   Accordingly it is our opinion that ¶ D of chap. 145, Laws of 1921, specifically provides for an audit in a manner prescribed for similar expenditures for other departments or branches of the state service, namely, an audit as now required by the general laws of this state.

The order of the trial court is affirmed, without costs.


BIRDZELL, C. J., and CHRISTIANSON and ROBINSON, JJ., concur.


GRACE, J. (dissenting).   The duties of the State Auditing Board, as

I believe, are to audit claims which are or may be chargeable against the state and.which are paid out of moneys in the state treasury.  The expense incurred by the Compensation Bureau are paid out of a particular fund, the compensation fund, of which the State Treasurer is the custodian.  The fund is accumulated by a premium to be paid by empolyers of the kinds and classes described in the Workmen's Compensation Act.

The question here presented is whether the bills of the ordinary expense of conducting the Bureau must be audited by the State Auditing Board, or whether they should be audited by the Bureau, which is composed of three members appointed by the Governor for definite periods of time and the Commissioner of Agriculture and the Commissioner of Insurance.

Chap. 145, Laws of 1921, ¶ D, provides:

"The salaries and compensation of the members of the Bureau, of the secretary and all actuaries, accountants, inspectors, examiners, experts, clerks, physicians, stenographers and other assistants, and all other expenses of the Bureau herein authorized including rent for offices of the Bureau, and the premium to be paid by the State Treasurer for the bond to be furnished by him, shall be audited and paid out of the workmen's compensation fund and the appropriation herein made in the manner prescribed for similar expenditure in other departments or branches of the state service, provided, however, the same shall not exceed in any one year the sum of fifty-five thousand dollars ($55,000.00)."

It is my opinion that it was the intent of the legislature that such expenses should be audited and authentication required by the Bureau in the same way that charges against the state are audited and authentication required by the State Auditing Board in auditing the expenditures of the various departments or branches of the state's service.