# JOHN J. REGAN AND OTHERS v. CHARLES M. BABCOCK AND OTHERS.
## STATE OF MINNESOTA, INTERVENER.[1]

January 24, 1936.

No. 30,519.

[1]Reported in 264 N. W. 803.

244

See 188 Minn. 192, 247 N. W. 12.

*Harry H. Peterson,* Attorney General, and *Harry W. Oehler,* Assistant Attorney General, for the State.

*Briggs, Weyl & Briggs* and *Rockwood & Mitchell,* for plaintiff-respondents.

I. M. OLSEN, JUSTICE.

The intervener, state of Minnesota, appeals from a supplemental judgment, entered by the trial court on March 2, 1935. There were six separate actions tried together and resulting in six separate judgments in favor of the plaintiffs, entered June 28, 1934. The six actions were taxpayers' suits brought to have declared void six contracts entered into by the commissioner of highways, and approved by the commission of administration and finance of this state, with six different contractors, for the paving of certain state highways. The plaintiffs further asked that the commissioner of highways and the commission of administration and finance be enjoined from making any further payments under said contracts and that the contractors be enjoined from any further performance of said contracts. In each case, also, plaintiffs asked for the recovery, by the state of Minnesota, of large sums of money, claimed to have been illegally paid to the contractors. What is above stated is from the amended and supplemental complaints.

We do not attempt any extended recital of the history of the litigation. The contracts were let, some in December, 1931, and others in April and May, 1932. These actions to annul the contracts, and for injunctions, were commenced about May 12, 1932, before any material amount of the work had been done and before any payments had been made. On May 16 the state of Minnesota, by

its attorney general, intervened and, in, effect, joined with the plaintiffs, realleging substantially the same facts as were stated in plaintiffs' complaints and asked that the contracts be declared void. Some days later, about May 25, 1932, the attorney general, on behalf of the state, the contractors, the commissioner of highways, and the commission of administration and finance, entered into a stipulation providing in substance that the work should proceed by the contractors and that the state would pay 80 per cent of the contract price on monthly estimates and retain the balance of 20 per cent until the trial and determination of the actions, said balance to be then disposed of as might be determined in the actions. The plaintiffs were not consulted and had no part in making the stipulation. The contractors then proceeded with the work under this stipulation, and payments were made to them thereunder.

Amended and supplemental complaints were thereafter permitted to be filed by the plaintiffs and the intervener. Various demurrers and motions were considered by this court in the opinion in Regan v. Babcock, 188 Minn. 192, 247 N. W. 12.

Before decisions were made it apparently was brought to the attention of the court that plaintiffs would be entitled to be awarded, out of any funds recovered or saved for the state, the reasonable expenses, including attorneys' fees, incurred by them in prosecuting the suits. The trial of the cases commenced October 2, 1933, and ended December 20 that year. The contract price involved in the six contracts aggregated more than $1,800,000. The court found the contracts void and in each case found the reasonable value of the work done by the contractor and that the state should pay no more than such reasonable value, and enjoined the highway commissioner and the commission of administration and finance from allowing or making any greater payments. The result of the decisions was to save to the state some over $390,000.

The court in its findings of fact stated:

"The State of Minnesota paid said defendant for said improvement 80 per cent of the price specified in said contract and said stipulation and has retained and still retains 20 per cent of said

contract price and has requested this court to determine the right, title and interest of the parties hereto in said 20 per cent so retained by the State of Minnesota."

In its conclusions of law it said:

"3. Plaintiffs and their attorneys may make application to this Court after the entry of the final judgment herein to have determined what the actual, necessary and reasonable disbursements of said plaintiffs and their attorneys were in connection with the conduct of this litigation and to have determined what the reasonable value of the services of said attorneys has been in this litigation. If such an application is made, then any party to this litigation may request that issues be framed upon the matters presented by such application and may request that such matters be determined in a trial by jury. After said matters have been determined, either in a trial by jury or by the Court without a jury as may be determined or agreed upon, said plaintiffs and their attorneys are entitled to receive out of the moneys to be paid to the Clerk of Court for the State of Minnesota and out of the moneys retained by the State of Minnesota, being said 20 per cent hereinabove referred to, including not only the funds in this case but also the funds in the five other cases consolidated with this case for the purpose of trial, the full amount of said actual, necessary and reasonable disbursements and the full amount of said reasonable attorneys' fees. Said disbursements and said compensation for attorneys' services shall be apportioned to said several actions in proportion to the total benefits to the State of Minnesota from the performance and completion of said projects as found in said several cases and shall be paid in said proportion out of said funds in the hands of the Clerk of the District Court of Ramsey County, Minnesota, and out of said 20 per cent fund in the control of the State of Minnesota. * * *

"5. The court shall retain jurisdiction of the fund involved in this litigation and in said five other cases consolidated with this case, including not only the moneys payable to the State of Minnesota from any of said defendants but also said 20 per cent retained by the State of Minnesota and brought into court for disposition

by this Court in accordance with the law and the facts until all sums payable to or from said fund have been paid and discharged in full."

In five of the cases it was found that the contractor had been overpaid, and the state was held entitled to repayments aggregating $33,597.30. This money was ordered to be paid over to the clerk of the trial court, and was so paid. The 20 per cent of the contract price was retained by the state, subject to further disposition. Judgments were thereupon entered in each case June 28, 1934, as stated. Thereafter, on application by plaintiffs, the determination of the amount to be awarded to the plaintiffs for expenses and attorneys' fees in the six cases came before the court for trial. The attorney general proposed that two issues be submitted to a jury, namely: (1) What the actual, necessary, and reasonable disbursements of plaintiffs and their attorneys were in connection with the conduct of this litigation; (2) what the reasonable value of the services of said attorneys had been in this litigation. The court granted the request and submitted the two issues for trial by jury. Trial was had, commencing on January 8, 1935. Verdicts were returned January 22 finding the amount of reasonable and necessary expenses to be $5,696, and the value of the services of the attorneys $60,000. Findings were thereupon made by the court, adopting the verdict of the jury on the questions submitted, and the court found that the money paid into the hands of the clerk of court should be applied toward the expenses and attorneys' fees so fixed by the verdict, and the balance of the expenses and the attorneys' fees be paid out of the 20 per cent of the contract price retained by the state. There was also an allowance of $1,500 for necessary disbursements of the plaintiffs in the litigation, to be paid in the same way. The court made an apportionment of the attorneys' fees, expenses, and disbursements to each of the six actions, of which no complaint is made.

In its conclusions of law the court held:

"That plaintiffs in said causes of action are entitled to judgment in their favor for the sum of Fifty-six Hundred and Ninety-six

Dollars ($5,696) in the aggregate, and interest thereon from January 22, 1935, to be paid out of the funds in the custody of the Clerk of this Court paid to and held by him as provided in the judgments heretofore entered herein and out of the 20% fund described in said judgments heretofore rendered in said actions to reimburse them for their actual, necessary and reasonable disbursements in connection with the conduct of this litigation, and that plaintiffs' attorneys are entitled to judgment in their favor that they recover out of said funds the sum of Sixty Thousand Dollars ($60,000) and interest from January 22, 1935, to compensate them for the reasonable value of their services in this litigation, together with Fifteen Hundred Dollars ($1,500) in the aggregate, for disbursements for expert witness fees in this proceeding."

and that:

"Let judgments be entered accordingly in each case as supplement to the judgment already entered in each of the six actions above entitled with the further order, judgment and decree to be contained in each of the judgments to be entered that the Clerk of the District Court pay to plaintiffs and their attorneys, as apportioned in Paragraph 6 of the Findings of Fact the moneys paid into Court by the various defendants, less the Clerk's fees of Three Hundred Thirty-five Dollars Ninety-eight Cents ($335.98); with a further order, judgment and decree that the balance of the said six judgments remaining unpaid after crediting the payments made by the Clerk of this Court, be paid to plaintiffs and their attorneys by the officers of the State of Minnesota out of said 20% fund held under the jurisdiction of this Court pending the disposition of these actions and subject to its judgments or directions."

Judgments were then entered March 2, 1935, directing the paying over to plaintiffs or their attorneys of the money in the hands of the clerk of court and directing the state auditor to draw warrants on the state trunk highway fund for the balance required to make up the payments of the attorneys' fees, expenses, and disbursements awarded, and ordered the payment of such warrants. From one of these judgments the present appeal was taken.

In the brief for the intervener-appellant counsel state:

"In the main, the judgments herein, both original and supplemental, are attacked on two grounds, namely: First, that the court, under no circumstances, had any right or jurisdiction to entertain the supplemental proceedings which were against the state and which resulted in said judgments against the state, or against the public money of the state, and, second, error in the proceedings, both original and supplemental, which vitiated the judgments so obtained."

■ We take up the consideration of the appeals in the way suggested by counsel. The primary and more important question is whether the trial court had the power to exercise control over these funds and enter judgments for the payments to be made to the plaintiffs or their attorneys, by the clerk of court out of money in his hands, and by the state treasurer out of the state trunk highway fund. That the court had power to hear and determine the amount of plaintiffs' necessary expenditures, including attorneys' fees, incurred in the litigation, cannot be seriously questioned. Whether the court had such control over the funds or savings to the state resulting from the litigation so that it could, in effect, impound such funds, whether in the hands of its own clerk or in the state treasury as part of the state trunk highway fund, and order payment of the plaintiffs' expenditures therefrom, without a special legislative appropriation, is the question.

These are suits in equity. By its intervention the state joined with the plaintiffs in seeking the relief asked for. It became, in effect, one of the plaintiffs in the cases. Appellant's counsel urge that, by the application for allowance of their necessary and reasonable expenditures out of the funds recovered and saved for the state, the action, in that respect, became an action against the state. Hence it could not be maintained without the consent of the state, given by legislative action. If the suits were such that the plaintiffs were entitled to be compensated for their expenses out of the funds recovered or saved by the action, then the state, by becoming a party plaintiff therein, should be held to have consented

to the hearing and determination of the question of the allowance and determination of the amount of such compensation, as being questions arising and for determination in the suits. In other words, when the state intervened it intervened in suits wherein the other plaintiffs had and would necessarily incur expenses and attorneys' fees which the court could allow to them out of the funds recovered or saved. That was one of the hazards of the litigation entered into by the state.

In State ex rel. Benson v. Stanley, 188 Minn. 390, 394, 247 N. W. 509, 510, this court held:

"Since the state has chosen to invoke the jurisdiction of the court in the establishment of a comprehensive trunk highway and has chosen to use and damage the defendant's 40 without condemning it, we hold that the landowner may intervene by motion in the condemnation proceeding and that the court may say to the state that it must bring the land of the defendant, concededly taken and damaged, into the proceeding for the assessment of compensation."

Such compensation, when the amount thereof is fixed in the condemnation proceeding, would be payable out of the trunk highway fund without any further legislative action. See discussion of this question in Cunningham v. Macon & B. R. Co. 109 U. S. 446, 3 S. Ct. 292, 609, 27 L. ed. 992.

That the court, in a suit in equity, under the circumstances here shown, may allow to the plaintiffs compensation for their expenditures, including attorneys' fees, out of the funds recovered or saved, where the suit is brought in a representative capacity for the benefit of an estate, municipality, or other beneficiary, cannot be seriously doubted. Trustees v. Greenough, 105 U. S. 527, 26 L. ed. 1157; United States v. Equitable Trust Co. 283 U. S. 738, 51 S. Ct. 639, 75 L. ed. 1379; In re Estate of Creighton, 93 Neb. 90, 139 N. W. 827; State ex rel. Stuart v. Holt, 163 Ind. 198, 71 N. E. 653; Council of Bedford v. State ex rel. Thompson, Hine & Flory, 123 Ohio St. 413, 175 N. E. 607; Fox v. Lantrip, 169 Ky. 759, 185 S. W. 136.

In Board of Co. Commrs. of Washington County v. Clapp, 83 Minn. 512, 86 N. W. 775, 776, the defendant, as attorney, was employed, by authority of the county board, to collect personal property taxes levied against a nonresident of the state. The taxes were levied in Washington county, this state. A sum of about $41,500 was recovered. This court held that the attorney had a common law lien upon the money recovered and was entitled to retain out of the money recovered the reasonable value of his services in the matter, the money having been received by him. It was urged that, as these taxes were in part state taxes coming to the state, the county was but an instrumentality of the state and that the attorney could not have any lien on funds collected for the state. In disposing of this claim the court said:

"But we do not consider the claim against the Bristol estate, afterwards merged into a judgment and converted into money, as funds, absolutely, of the different governmental subdivisions, until the proper amount was determined and ready for distribution. That amount could not be determined until the expenses connected with its collection were known and deducted. The balance, whatever it was, should be credited to those several funds."

The further claim was made that, under the statute, the attorney would have to file his claim and have it allowed by the county board. It was held that the amount retained being admitted to be the reasonable value of the services, no claim need be filed or acted on by the county board.

In the present case the necessity for and the reasonable value of the expenses and attorneys' fees were fully litigated in the trial court, and the court, at the request of the assistant attorney general, submitted those questions to the jury. If there were no reversible errors in the trial, that settled the question of the amount plaintiffs were entitled to. The state, throughout the trial, did present and reserve its objections to the jurisdiction of the court to award any compensation for expenses and attorneys' fees and its objection to the power of the court to impose any lien upon the funds or to order any payments to be made to plaintiffs for expenses or attor-

neys' fees either out of the money in the hands of the clerk of court or in the state treasury as the retained 20 per cent of the contract price of these contracts.

The question of whether plaintiffs had any lien upon these funds is not important. No claims of any third parties to these funds are involved. If plaintiffs are entitled to be paid out of these funds, such funds are there and are available, and a judgment directing payment is all that is necessary. The judgments do not provide for the foreclosure of any lien.

The power of the court, in an equity suit involving trust funds, to charge the fruits of the litigation recovered by the plaintiff with the expenses incurred in the litigation was held to be a general rule in United States v. Equitable Trust Co. 283 U. S. 738, 51 S. Ct. 639, 75 L. ed. 1379. There, the next friend of an Indian, incompetent, brought suit to recover and preserve a trust fund belonging to the Indian, and the court, by supplemental decree, allowed the plaintiff to recover his expenses and attorney's fees and directed payment thereof out of such fund. The United States had intervened in the action. The claim of the United States was that this trust fund was under its control and not subject to disposal in any form or for any purpose save with the approval of the secretary of the interior, the custodian of the fund. The court affirmed the supplemental decree, except that it reduced the amount of attorney's fees allowed.

The principle applied in that case seems applicable here. The funds recovered and preserved here are, in one sense, trust funds. The state constitution creates a trunk highway fund for the establishment, construction, and maintenance of a system of state trunk highways, and provides that such fund shall consist of that part of any tax imposed on motor vehicles not required for the trunk highway sinking fund. The sinking fund is to be used to pay the principal and interest on the bonds authorized to be issued. The proceeds of the sale of such bonds go into the trunk highway fund. The trunk highway fund is to be used solely for the purposes of establishing, constructing, and maintaining the said highways. While moneys going into this fund are paid into the state treasury, the fund so created is separate from all other state funds, and the

state legislature cannot use or dispose of the moneys therein for any other than the purposes stated.

■ The constitution, art. 9, § 9, provides: "No money shall ever be paid out of the treasury of this state except in pursuance of an appropriation by law."

The question then is: Has there been an appropriation by law out of which plaintiffs' recovery for expenses and attorneys' fees may be paid without further special appropriation? As already stated, the trunk highway fund is a separate and distinct fund out of which is paid the money for the establishment, construction, and maintenance of state trunk highways. By legislative enactment found in 1 Mason Minn. St. 1927, § 2554, it is provided that the commissioner of highways is authorized to expend out of that fund such portions thereof as are available for the purposes stated, "and there is hereby appropriated, annually, from such fund the entire amount thereof or so much as shall be necessary for the location, construction, reconstruction, improvement and maintenance of the trunk highway system." In condemnation proceedings, damages awarded to landowners by the appraisers, or by the court on appeal, are paid from this fund. Money due to contractors and others for construction, maintenance, or repairs on highways are so paid, expenses and salaries of the highway department are so paid, all under this legislative appropriation and without further special appropriations.

The expenditures by the plaintiffs in the present actions were for recovery and preservation of a substantial part of the trunk highway fund. The plaintiffs, as a result, provided a substantial sum for the purposes for which the highway department and the trunk highway system were created. It must be held that plaintiffs' expenditures were necessary for the purpose of locating, constructing, and maintaining trunk highways, and payment for such expenditures is authorized and covered by the legislative appropriation pointed out. In addition to that, the result of plaintiffs' actions removed unauthorized restrictions on biddings for highway contracts in the future, which, under the circumstances shown, should result in further savings to the trunk highway fund.

254

The state has accepted the benefits received from the original judgments of June 28, 1934. It has retained the 20 per cent of the contract price, on these six contracts, in its trunk highway fund, except as to two of the contracts, where, by the judgments, the contractors were found entitled to somewhat more than 80 per cent of the contract price. In those two cases the contractors have been paid the additional amounts due them out of the 20 per cent retained on those contracts in the trunk highway fund. The expert witnesses appearing for the state have been paid out of the trunk highway fund. The state having accepted the benefits from the judgments and acted in compliance therewith, it would appear to be too late now to raise objections to the original judgments. Thwing v. McDonald, 134 Minn. 148, 156 N. W. 780, 158 N. W. 820, 159 N. W. 564, Ann. Cas. 1918E, 420.

■ The claim is made that the recovery of attorneys' fees was based on a contingency. There is evidence that plaintiffs' attorneys had stated to their employers that if no recovery was obtained their fees would be nominal, and, if recovery was had, then fees ought to be commensurate with the recovery. Some witnesses based their opinion as to the value of attorneys' services on a percentage basis. The court, in its charge said:

"I will say that the attorneys would have received nothing from the state if they had not been successful in the suits, but they are not entitled to increased compensation on that account. They are entitled to reasonable compensation, as I have said before."

That the jury understood and followed the charge of the court is fairly well shown by the verdict, which is much less than it would have been if based on any percentage basis testified to by plaintiffs' witnesses. The success of the litigation and the amount of the recovery are elements properly to be considered in determining the reasonable value of attorneys' fees.

The verdict for attorneys' fees is not excessive. The litigation of six separate suits and highway contracts, the great amount of work required in investigating and gathering the evidence for all of these suits and preparing same for trial, the length of time occu-

pied in the trial, the numerous motions and demurrers, the appeals on the demurrers heard in this court, one further appeal brought and here dismissed, the two years occupied in the litigation up to the judgment in March, 1935, amply sustain the amount awarded by the verdict.

■ The fact that the court directed payment of the attorneys' fees to the attorneys instead of to them for the plaintiffs is not important. There can be no prejudice to the state. In equity suits it has been many times held that where attorneys' fees are allowed out of a fund recovered or saved the court may order such fees paid direct to the attorneys. Central R. & B. Co. v. Pettus, 113 U. S. 116, 5 S. Ct. 387, 28 L. ed. 915, and cases cited in note to Okfuskee County v. Hazlewood, 11 A. L. R. 709, 713.

■ It is sought to inject into the case the question of federal aid to the state for highway purposes. So far as called to our attention, it is not shown that any part of the funds here recovered and saved was money received from or belonging to the federal government.

It is contended that plaintiffs acted merely for the St. Paul and Minneapolis Taxpayers Associations and were to be financed by such associations. It is not shown that any payments have been made by these associations to cover or apply on the amounts allowed by the court, and the primary liability apparently rests upon the plaintiffs.

A large number of assignments of error relating to rulings on the admission, exclusion, and striking out of evidence are grouped under point V of appellant's brief. Without extending this opinion beyond reasonable length, we cannot separately discuss the more than 20 assignments so grouped. Appellant's counsel present no argument except to say, in substance, that the court erred in its rulings. No showing is made of any reversible error.

There will be no interference by the courts with the executive or legislative department of the state by having these expenditures and attorneys' fees paid out of the money recovered and saved in the trunk highway fund, which money would otherwise have been paid to the contractors.

Judgment affirmed.