BOARD OF COUNTY COMMISSIONERS OF WASHINGTON COUNTY
v. MOSES E. CLAPP and Others.[1]

June 21, 1901.

Nos. 12,579—(141).

### Collection of Taxes—Authority of County.

The county is the representative and agent of the state, school districts, and other municipal subdivisions, for the purpose of collecting delinquent personal property taxes; and it has the implied power to incur necessary expenses, including attorney's fees, in connection therewith.

### Proceeds of Collections.

The sum realized by the county, as a result of legal proceedings, from delinquent property taxes, less the amount of such expenses and fees, belongs, in the proportion provided by law, to the county, state, school districts, and other governmental divisions.

### Employment of Assistant Attorney.

Laws 1895, c. 282, is the only authority in this state for the employment by the county commissioners of legal assistance for the county attorney.

### Same—Payment of Fee.

The payment of such assistant counsel must be made out of the county funds, but delinquent personal property taxes, collected by the aid of such counsel, are, within the meaning of this act, "county funds," until the amount of the necessary expenses and attorney's fees are determined and deducted therefrom.

### Collection by Attorney—Equitable Lien for Amount of Fee.

Under G. S. 1894, § 687, an attorney's claim for such legal services must be filed for allowance by the county board, as a preliminary to an action against the county; but, where the attorney has collected money upon a judgment for delinquent personal property taxes, he has an equitable lien or set-off, as against the fund so collected, to the extent of the reasonable value of his services, and in such case he is not required to pay the amount of fees over to the county, but may retain the same and pay over the balance.

### Recovery of Amount Retained.

Where it is admitted by the county that the amount so retained by the attorney is the fair and reasonable value of his services, such amount

[1] Reported in 86 N. W. 775.

cannot be recovered from the attorney by the county in an action in conversion or for money had or received.

Appeal by plaintiff from a judgment of the district court for Ramsey county, Brill, J., in favor of defendant. Affirmed.

J. C. Nethaway, for appellant.

Clapp & Macartney, pro se. .

LEWIS, J.

This is an action brought to recover the sum of $11,750 from respondents, alleged to be wrongfully detained by them.

The facts stipulated for the purposes of this trial are as follows: From the year 1883 to 1894, inclusive, personal property taxes were assessed and levied against one Sophia M. Bristol, a resident of the state of New York, on certain credits due to her in the county of Washington, Minnesota. She died in 1894, and her will was probated in Ramsey county. No part of the taxes was ever paid by her, and they accumulated in an amount of over $60,000. In order to recover this sum, the board of county commissioners of Washington county authorized the county attorney to procure such legal assistance as he deemed necessary, and, pursuant to this authority, respondents were employed by the county attorney for the purpose of collecting the debt. Thereupon the county's claim was filed against the estate in the probate court of Ramsey county, and proceedings with reference to its collection were then taken in the United States courts, which finally resulted in a judgment of $41,535.86 against the estate. It was stipulated that the reasonable value of respondents' services as attorneys in the prosecution of the claim and in the procurement and collection of the judgment was the amount of $12,500, of which respondents retained in their possession the sum of $11,750, $750 having already been paid. The balance of the amount collected, $29,785.86, respondents paid over to the county, and it was received by it without prejudice.

The county contends for the position that the attorneys had no right to retain this money in payment of their services, for the reason that under the provisions of G. S. 1894, § 6194, they could not acquire any lien upon the money in their possession, and for

the further reason that their claim for services against the county was not subject to offset as against the fund then in their possession. It is argued that an attorney's lien did not attach to the funds in the hands of respondents, for the reason that municipal corporations, in levying taxes, are instrumentalities of the government, and taxes levied against them are, in legal effect, levied by the state; that in this case the county, in collecting these taxes against the Bristol estate, was the instrumentality of the state, and what the attorneys did for the county was the act of the state; and that section 6194, supra, should not be construed to include within its appropriation and effect the sovereign state.

It is unnecessary at this time to determine whether or not respondents could enforce a lien under the statute. We do not rest this decision upon that ground, and, under such circumstances, the effect of that statute upon the common-law rights of the parties should be left for future consideration. It may be conceded that an attorney cannot offset his claim for services against public funds, by virtue of G. S. 1894, § 5237. Peirce v. City, 3 Metc. (Mass.) 520; Trenholm v. Charleston, 3 Rich. (So. C.) 347; Johnson v. Howard, 41 Vt. 122, 98 Am. Dec. 584; Apperson v. City, 2 Flip. 363, Fed. Cas. No. 497. The taxes in question were levied for the benefit of the state and the several governmental subdivisions, and whatever amount is finally realized upon the judgment will belong to and be distributed to such governmental divisions according to their pro rata share. We may concede that if the money in the hands of respondents was in fact money belonging absolutely to the state, county, city, and various school districts, in certain proportions, then an offset could not be made, as against those governmental divisions, because respondents had no mutual contract relations with them, and, there being no mutuality of obligation, there could be no right to retain the money, either by virtue of an attorney's lien, a set-off, or upon any other theory.

But we do not consider the claim against the Bristol estate, afterwards merged into a judgment and converted into money, as funds, absolutely, of the different governmental subdivisions, until the proper amount was determined and ready for distribution.

That amount could not be determined until the expenses connected with its collection were known and deducted. The balance, whatever it was, should be credited to those several funds.

For the purpose of levying and enforcing the payment of taxes, the county is the authorized agent or trustee of the various municipal divisions; and, if taxes are not voluntarily paid, their collection is enforced through the county machinery, and the board of county commissioners has exclusive jurisdiction to authorize such proceedings as were taken by respondents in this instance. It is clear, therefore, that, unless prohibited by some statute, neither the state, city, nor school districts have any claim upon money collected in excess of the amount actually realized by their representative and agent, the county. It follows that it is of no concern to those various municipal subdivisions in what manner the county paid for such services. The county had the power, implied by virtue of its position as such trustee or agent, to authorize the collection of the tax debt either upon a commission basis, or by contract, express or implied, for compensation to the extent of the reasonable value of such services.

We are referred to Laws 1895, c. 282, as a limitation upon the county to pay for such services as were rendered by respondents out of county funds only. And it is claimed that the words "county funds" mean moneys actually belonging to the county, and do not include any part of moneys collected from the Bristol estate, for the reason that such moneys belonged exclusively to the various governmental subdivisions mentioned. The chapter referred to is the only authority we are aware of by which county commissioners are authorized to employ assistant counsel, the first section of which reads as follows:

"That in any suit or proceeding where any county is a party the board of county commissioners may, when they deem it for the interests of the county so to do, employ the services of any attorney at law to assist the county attorney or to appear for the county and protect its interests therein, or to advise the county commissioners in relation thereto, and pay for such services out of the county funds."

In our opinion, the words "county funds" refer to those matters

in which the county is the exclusive party interested, or to such matters as are within the absolute jurisdiction of the county for the purposes of the employment of the services therein mentioned.

As already stated, the county is the only instrumentality for the collection of the debt in question. It has the power to enforce that collection. Under this statute it has the power to employ additional counsel to assist the county attorney for the purpose of conducting such proceedings, and it necessarily follows that, because of such jurisdiction and power, the funds so collected through its instrumentality and by reason of its exercise of power are, for the time being, and until the amount is finally determined, county funds, within the meaning of this act. Any other construction would be unjust and uncalled for. If by the term "county funds" is meant only the actual funds of the county, then in this case the state, city of Stillwater, and the various school districts are entitled to receive their pro rata share of the entire amount of the judgment of $41,535.86; and, while the county is entitled to receive only its pro rata share thereof, yet it must pay the entire amount of the expense of collecting the same.

There is no sound distinction to be drawn between money expended in such proceedings in the way of disbursements and in the way of attorney's fees. If in such proceedings the county is compelled to pay the fees of attorneys from its own fund, then it may be compelled to pay out for such purposes a much larger amount than it would receive from the sum realized. And what justice is there in requiring the county to pay out of its own money the legal expenses of recovering money for the benefit of other municipal branches? This was a doubtful debt. Neither the state, city, nor school districts would ever have received a dollar of their interest in this large amount unless the county, as their representative and trustee, took such steps as were taken in this instance. There is nothing compulsory about the statute. In such cases the commissioners are not required to employ counsel, but they may do so when they deem it for the interests of the county. If the legal adviser of the county is not equal to the task, such a debt must go uncollected, unless, as in this instance, the county commissioners proceed and employ additional counsel.

As we understand the statute, it treats the county, in a general sense, as representing whatever interests are imposed upon it by law; and the funds collected from defaulting taxpayers are, within the meaning of this act, until they are finally collected and adjusted, and the amount of final distribution determined, to all intents and purposes, county funds. We therefore hold that under and by virtue of this act the county commissioners were the representatives of the various municipal divisions, and had authority to make the contract with respondents through the county attorney and to compensate them for their services out of the funds collected.

But it is claimed the respondents were not entitled to retain the amount of their fees from the moneys collected by them; that under the provisions of G. S. 1894, § 687, they must file their duly-verified claim with the county commissioners, and allow the same to take its course, the same as other claims against the county. It being admitted that the amount so retained was just and reasonable, respondents were not guilty of conversion or wrongfully diverting the money by paying themselves out of the fund which was legally applicable for that purpose. Such right of application existed under the common law by virtue of the relations of attorney and client, and we can see no distinction in that respect between a private party and a governmental subdivision such as the county. Such distinction did not exist at common law. It may be termed the right of equitable lien or set-off. In re Paschal, 10 Wall. 483; The Siren, 7 Wall. 152; State v. Ampt, 7 Am. Law Rec. 469. It must be noted that the doctrine is founded upon the fact that such fund is created by the exertions of the attorney, and grows out of his contract relation with reference thereto, and has application only to such a condition.

The statute (§ 687 supra) does not prohibit such application as was made in this instance by respondents. If they had not retained their fees, but had paid over to the county the entire amount collected, then the method of collecting their claim against the county would be regulated by the section cited. As stated in Old Second Nat. Bank v. Town of Middletown, 67 Minn. 1, 69 N. W. 471, the statute was enacted in furtherance of public policy, to

prevent needless litigation, and to save unnecessary expense, by affording an opportunity amicably to adjust all claims before suit is brought. It was competent for the legislature to suspend the right to bring suit until the claims are first presented to the auditing board. But it has not been necessary for respondents to commence a suit. Their claim has been paid, and there is nothing due them. This action is for money had and received, and the parties are in the same position they would be had respondents failed to pay over to the county any of the funds collected, and suit had been brought to recover the entire amount. In such case respondents would, upon the theory of equitable set-off, be entitled to retain an amount equal to the reasonable value of their services; but, as the case stands, respondents have been paid, and there is no law requiring that to be done which would be useless.

Judgment affirmed.

COLLINS, J. (dissenting).

I cannot agree with the conclusion reached in the foregoing opinion. I think it wholly immaterial whether the amount retained by the attorneys is a just and reasonable compensation for their services or not, for the question is not affected by the amount retained. It is simply as to the right asserted by the said attorneys. It stands conceded that they were employed, and could only be employed, by virtue of Laws 1895, c. 282, which, as stated in the main opinion, authorized such employment, and expressly provided that compensation must be made out of county funds. These words, "county funds," mean exactly what they say, and refer to money collected for county purposes, as authorized by G. S. 1894, §§ 1558, 1563. When collected, this money goes into the "county fund,"—one of the several funds referred to in section 1566. These words were used, and this provision for compensation to attorneys was made in this manner, for a purpose, and to prevent county commissioners from employing special counsel upon slight pretexts, and when the services required could as well be discharged by the regularly elected and salaried legal advisers.

The object in providing for payment out of county funds was to place a responsibility upon county boards, to compel them to use

funds belonging to the county they represented, and to prevent them from employing attorneys without good reason, and then paying for services out of moneys belonging to the state or its minor governmental subdivisions, other than counties. Money collected as this was, and of its character, can only be made county funds by the ipse dixit of this court, and an opinion holding that it can open the door for boards of county commissioners to employ special attorneys, without limit, at the expense of the state and of these various subdivisions, in the face of an express intention of the legislature to compel payment out of moneys collected for county purposes, and to prohibit the commissioners from using other moneys therefor. As before stated, the only authority for the employment of these attorneys is that found in the act above referred to, and the only way in which they can properly collect their pay is through the same instrumentality that must be used by other people when they render services for counties. They should be required to pursue the statutory course, and to file a duly verified claim, in accordance with the provisions of G. S. 1894, § 687. No good reason can be given for requiring a common laborer who performs services for a county to file a verified claim, and not requiring attorneys at law to do the same thing. The statute does not exempt the latter, and the courts should not. This claim for attorney's fees should be presented to the board as other claims must be, and, if the claimants are dissatisfied with the amount allowed, the courts are open to them. I do not understand upon what principle attorneys at law are exempted from the operation of this statute.

We have a number of decisions which would seem to be more or less in point as to the right to a lien. In Jordan v. Board of Education, 39 Minn. 298, 39 N. W. 801, and Burlington Mnfg. Co. v. Board of Court House City Hall Commrs., 67 Minn. 327, 69 N. W. 1091, it was held that mechanics who construct public buildings are not entitled to liens upon the same. The statute, which is general and comprehensive in terms, does not apply to public buildings, said the court. This ruling was placed upon considerations of public policy; for, as was said in the Jordan case, the exercise of a power of this kind in respect to public buildings

would be fraught with great public evils, and subversive of the very purposes for which municipal corporations are created. For the same reason, it was held in McDougal v. Board of Supervisors, 4 Minn. 130 (184), that a public corporation, such as a county, was not liable to garnishment; and in subsequent cases (the last one being Orme v. Kingsley, 73 Minn. 143, 75 N. W. 1123) it was held that the salaries of public officers could not be intercepted in the hands of corporations by any legal process or proceeding whatsoever.

These cases, in principle, support the contention that as against the state, or governmental subdivisions thereof, the right of lien or of equitable set-off ought not to be recognized. And it is immaterial, when considering the right to a lien, whether it be statutory or at common law. The only case cited which really recognizes this right to retain money collected for a state is In re Paschal, 10 Wall. 483. That was a case in which a motion was made in the supreme court of the United States to compel an attorney who had collected money for the state of Texas to pay it into court for the use of the state. This motion was resisted on the ground that the attorney had the right to retain a part of the money, either by virtue of an attorney's lien at common law, or because he had an equitable set-off, to the amount of his just compensation, against the state. The court disposed of the question in this summary manner:

"A good deal has been said in the argument on the question whether the respondent has, or has not, a lien on the moneys in his hands. We do not think that the decision of this motion depends alone on that question. For even if he has not a lien co-extensive with the sum received, yet, if he has a fair and honest set-off, which ought, in equity, to be allowed by the complainant, that fact has a material bearing on the implied charge of misconduct which underlies the motion for an order to pay over the money. And when, as in this case, there exists a technical barrier to prevent the respondent from instituting an action against his client (for it is admitted that he cannot sue the state of Texas for any demand which he may have against it), it would seem to be against all equity to compel him to pay over the fund in his hands, and thus strip him of all means of bringing his claims to an issue. Whilst, on the other hand, no difficulty exists in the state instituting an action against him for money had and re-

ceived, and thus bringing the legality of his demands to a final determination."

The conclusion of the court, as will be seen, was based and rested upon the ground that as the attorney could not maintain an action against his client, the state, to recover his fees, he ought not to be compelled to part with the funds in his hands, because, if he did, he would be stripped of all means of bringing his claim to an issue and obtaining his fees. This reasoning is not a fair answer to the claim that, as against the state, no one can assert a lien upon its property; for it presupposes and assumes that the latter will not provide for and pay its just debts.

But, in any event, the ground given for the conclusion rendered in the Paschal case is of no weight, because the statutory method for collecting reasonable compensation is open to the attorneys in the present case. There is no barrier to the enforcement of their claim, technical or otherwise; and the argument used in the Paschal case is not at all pertinent or forceful, either on principle or on authority, and without regard to the statute requiring claims to be filed. I am of the opinion that the law should not permit the administration of governmental affairs to be embarrassed by the seizure of public property or public funds to pay debts due to individuals. This well-settled rule rests upon considerations of public policy, and its object is to prevent embarrassment in governmental affairs, and not to protect or assist public officers. It is against public policy to allow an attorney to retain moneys in his hands that have been levied and collected for a specific purpose, and, when collected, to be apportioned to the different political subdivisions of the state. Such a course by an attorney, if approved by the courts, materially interferes with and embarrasses the speedy administration of public affairs. The following cases support the doctrine that a state, with its minor governmental subdivisions, is exempt from an application of the rule as to liens or set-offs which applies to private individuals: Wood v. State, 125 Ind. 219, 25 N. E. 190; Warrin v. Baldwin, 105 N. Y. 534, 12 N. E. 49; Hendrick v. Posey (Ky.) 45 S. W. 525; Divine v. Harvie, 7 T. B. Mon. 440, 443; U. S. v. Knight, 14 Pet. 301, 315.

To illustrate the logical consequence of this decision, let me ask two questions: First. Would it be held that a sheriff who collects personal property taxes by virtue of section 1574 can withhold the money, upon the ground that he is entitled to retain his fees for such collections? Such a claim would not be considered for a minute in any court. He would be told to present his bill to the county board, because the county cannot be deprived of its revenues for a single moment, or be delayed in its attempt to cover them into its treasury. Second. If the auditor of the county should employ a bookbinder to rebind his tax assessment books, would the latter be justified in asserting his right to a common-law lien by holding possession of the books, and in refusing to give them up until he had been paid for his labor upon them? Certainly not, and I do not believe any attorney would so contend. But the inevitable result of this decision is to hold that any man who works upon property belonging to the state, and has it in his possession, may insist upon his lien and such possession until he is paid. The conclusion is that, when attorneys employed by the state collect moneys for it, they may withhold from its treasury such amount as they may deem proper as compensation, and cannot be made to pay it over by any legal proceeding, except it be at the end of a lawsuit instituted by the state.

Stating it briefly, I cannot agree with my associates in the case, for two reasons, either thereof being good, I think: First. An attorney who accepts employment under chapter 282, supra, agrees to present his bill for compensation in the manner prescribed for ordinary mortals, and also to accept payment out of "county funds," which term means county funds or county money, and nothing else. I am opposed to any construction of the statute which discriminates in favor of lawyers, as against persons in every other profession, occupation, or walk in life. Second. Excluding all consideration of a plain statute, I believe it against public policy and against the current of authority to hold that any one may have a lien or the right of set-off, as to moneys collected in behalf of the state or for its agents, in proceedings to enforce the collection of taxes.