[Civ. No. 12258. First Dist., Div. Two. Jan. 26, 1943.]

ASSOCIATED INDEMNITY CORPORATION (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and DeLANCEY C. SMITH, Respondents.

Purvis, Jakobsen & Smith, Daniel W. Burbank and Burbank & Laumeister for Petitioner.

W. N. Mullen as Amicus Curiae on behalf of Petitioner.

Everett A. Corten and Dan Murphy, Jr., for Respondents.

NOURSE, P. J.—Petitioner seeks to annul an award of the respondent commission in favor of respondent Smith upon the ground that the evidence is insufficient to support the finding that Smith was an employee.

There is no substantial conflict in the evidence. ■ The sole question presented is whether it can be said as a matter of law that an attorney who is employed under a general retainer is not an employee despite the fact that certain of the services he renders are of a general business nature rather than strictly legal.

The respondent DeLancey C. Smith is a duly admitted attorney at law. He maintained a private office in San Fran-

cisco where he employed assistants whose compensation was paid by him as were other office expenses. He engaged in a general practice. For a number of years he had been employed or retained by the Pacific Intermountain Express Co. as an "attorney and consultant." He rendered various services, some of a strictly legal nature, such as drawing legal documents and defending suits. Other services were consultations on matters of business policy such as selection of terminal locations and facilities, personnel and general operational problems. For certain additional work he was paid additional compensation. The amount of this extra compensation was not determined in advance. At the conclusion of the particular work a bill was sent to the company for an amount fixed by Mr. Smith. Most of this additional work was outside of San Francisco. In those cases he generally received $100 a day and all travelling expenses. At times Mr. Smith paid all his expenses and was later reimbursed at other times a sum was advanced by the company, and on still other occasions certain items, particularly those for transportation, were charged directly to the company. There is no evidence of any agreement that services for the company should be performed by Smith personally, and it is not disputed that certain of the work was done by his office assistants, though the nature of the work they did is not disclosed. It appeared that about one-third of the applicant's time was spent on the Express Company business, though there was no agreement to devote any fixed amount of time to the work. There is no evidence that Mr. Smith was carried on the payroll as an employee or that reports were made or taxes paid under the Social Security Act.

The award was made for medical expenses incurred because the applicant had contracted pneumonia while travelling on work of the Express Company. It appeared that the primary work was to appear before the Interstate Commerce Commission at Pocatello, Idaho, on an application for a certificate of convenience and necessity in connection with a sale of certain of the Express Company's properties. Mr. Smith went first to Salt Lake City where he conferred with employees of the company in the preparation of data to be presented to the commission. He then went to Pocatello where he appeared for the Express Company. Respondents assert that his function was principally to supply information to the commission because the matter involved a sale wherein

the Express Company was the seller and that the burden of proof was on the buyers who were separately represented. At this hearing Mr. Smith testified. This testimony was to have been given by a Mr. Savage, not an attorney but the president of the Express Company, who was to have accompanied Mr. Smith on the trip but who at the last moment was unable to go. On other occasions the company had been represented by a regular full time employee who was not an attorney, but generally after consultation with Mr. Smith. At the conclusion of the hearing Mr. Smith returned to Salt Lake City, where he conferred for one day with employees of the company on general business affairs. Transportation on the trip was by plane, automobile, and train. Plane accommodations were procured on the company's vouchers, use of which was restricted to "Officer, Director, and Employees, Etc." By use of the voucher a discount is obtained. On the voucher Mr. Smith was described as "attorney for Pacific Intermountain Express." The automobile used belonged to the company. After his return to San Francisco, Mr. Smith was confined to his bed with pneumonia until January 14, 1942, a period of over three months. During this time he was paid the regular sum of $250 per month though the work that was done was performed by his assistants.

No question is raised as to the sufficiency of the evidence to support the finding that the sickness arose out of and in the course of the employment, if there was employment.

Both petitioner and respondents in their points and authorities have proceeded upon the assumption that if certain of the services performed by Mr. Smith were not done in his capacity as attorney at law, or, as respondents contend, were not purely incidental thereto, that they were necessarily performed as an employee. This assumption is a violent one. Generally, any specialized or professional services rendered other than by one engaged for fixed hours at a fixed recompense are not within the compensation act. (1 Schneider, Workmen's Compensation Law, 2d ed., 198.) In distinguishing between a contract of employment and one creating the relation of independent contractor a number of factors are to be considered. In 39 C.J. 1315, 1316, the rule is stated as follows: "Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece

of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results. All these matters are to be taken into consideration in determining whether or not a party is an independent contractor.'' This statement of the rule is approved in *Casselman* v. *Hartford A. & I. Co.*, 36 Cal.App.2d 700 [98 P.2d 539], upon which respondents rely. ▮ In the instant case each of these factors was present. Mr. Smith was engaged to do specified pieces of work rather than to devote any fixed time to such work as his alleged employer might specify. He was engaged in an independent calling. It is true that respondents insist that such is not entirely true because he was consulted on business problems but it appears that on such occasions he was merely called on to render an opinion because of his particular abilities. At most it might be said that Mr. Smith was a specialist in two fields and was retained for his abilities in both. Admittedly Mr. Smith employed assistants who were under his exclusive control, and he furnished his own materials. These assistants were either trained lawyers or aides of Mr. Smith in his legal practice. From the very nature of the services rendered he had the ''right to control the work while it is (was) in progress.'' The last mentioned factor has received the greatest emphasis in the authorities in this jurisdiction. (13 Cal.Jur. 1019.) The respondent Smith was an independent contractor and not an employee. It follows, of course, that he was not within the terms of the Workmen's Compensation Act.

▮ There is another ground upon which the award must be annulled. If the services rendered were those of an attorney at law as such the respondent Smith certainly was not an employee. In *Coleng* v. *Ramsdell,* 19 Cal.App.2d 376 [65 P.2d 365], in holding an accountant engaged on a monthly fee to be an independent contractor the court, at page 381, said: ''Ramsdell was as much engaged in business for himself, in performing the work called for in his contract with the appellant, as is a lawyer who engages to do certain work for a client upon a regular monthly retainer.'' Seeking to avoid this rule respondents point to the fact that certain of the services performed by Mr. Smith could have been performed by a layman but this is not the test. Laymen may appear before the respondent commission but could anyone reasonably contend that when an attorney does so he is not practicing law?

As stated by the Committee on Professional Ethics and Grievances of the American Bar Association in its opinion 57: "The fact that a layman can lawfully render certain services does not necessarily mean that it would not be professional services when rendered by a lawyer."

In *In re Soale,* 31 Cal.App. 144 [159 P. 1065], it was held that an attorney acting for his client in arranging for transfers and sales of real property was none the less acting in his capacity as an attorney at law. At pages 152, 153, the court says: "It is our opinion, however, that in these transactions Mrs. Jenkins reposed confidence in Mr. Soale as a counselor at law. The evidence does not indicate that he was engaged in business as an agent or broker or maintained his office for any purpose other than in the course of his profession as an attorney and counselor. She went to him in that office and called upon him for advice and assistance in the conduct of her business affairs, without any notice or suggestion that in accepting the employment he was representing her in any way other than in his professional capacity. The occupation of a lawyer is not confined to appearances for parties in actions in courts of justice. A very large part of the professional work done by them consists in advice given to clients for the general purpose of aiding them in the conduct of their business affairs. At the time of these transactions Mrs. Jenkins was consulting Mr. Soale concerning a proposed action at law, and it appears that she consulted him about her other business affairs indiscriminately and without any attempted classification of the transactions as being partly within and partly without the scope of his professional business. She was entitled to believe that she was under his care as a counselor employed by her. The fact that in this particular transaction he did not enter any fee charges against her does not change the situation at all, for he was entitled to charge such fees if he so desired. We conclude, therefore, that she did repose confidence in him as her counselor at law, and the only remaining question is as to whether or not he maintained inviolate that confidence."

Here Mr. Smith was engaged under a general retainer. Such a retainer is defined in *Rhode Island Exchange Bank v. Hawkins,* 6 R.I. 198, 206: "A general retainer merely gives a right to expect *professional service* when requested, but none which is not requested." (Emphasis ours.) Just as "The value of an attorney's services is a matter with

which a judge must necessarily be familiar'' (3 Cal.Jur. 714) so too ''a judge must necessarily be familiar'' with the fact that practically without exception every attorney who is retained by a corporation is called upon at times to render opinions on matters of business and that the same is frequently true of attorneys engaged by individuals. Such services or opinions are necessarily incidental to the legal services called for by a general retainer. As a matter of law they do not convert the professional relationship to one of employer and employee.

In *Casselman* v. *Hartford A. & I. Co.*, previously referred to, an attorney was engaged to investigate an accident. He was to go from San Francisco to Stockton. At Stockton he was to contact an employee of the company who would give him his ''leads and contacts.'' It is this fact that is emphasized by the court in holding that there was sufficient evidence of control to support the jury's finding. As is stated above the Casselman case quotes with approval from 39 C.J. 1315, 1316, which we have quoted. What has already been said with respect to the application here of the rule there set forth is sufficient to distinguish the Casselman case.

Respondents rely primarily upon *Industrial Commission* v. *Moynihan*, 94 Colo. 438 [32 P.2d 802], and *O. P. Skaggs Co.* v. *Nixon*, 97 Colo. 314 [50 P.2d 55]. The latter of these cases was decided in department and merely cites and follows the earlier decision. We do not agree with the majority opinion in the Moynihan case. That case was heard in bank but it does not appear how many justices participated in the decision. We are in accord with the dissenting opinion wherein the dissenting justice states: (p. 804) ''The majority opinion seems to go beyond all bounds of logic and authority.''

In this ruling we do not hold that the relationship of employer and employee cannot exist when an attorney is employed to perform professional services for his employer, and when the employer reserves the right to control the work of the attorney, as in the case of the employment of an attorney for fixed hours at a fixed compensation. But, under the undisputed facts of this case, where such control was not retained and where there was present each of the three factors determining the independent contractor relationship,

we must hold that the attorney was not an employee entitled to compensation under the act.

The award is annulled.

Sturtevant, J., and Spence, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 25, 1943. Carter, J., voted for a hearing.