(No. 7132. July 13, 1943.)

E. J. DAHL, Plaintiff, v. CALVIN WRIGHT, State Auditor of the State of Idaho, Defendant.

[139 Pac. (2d) 754]

J. L. Eberle and E. A. Weston for plaintiff.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for defendant.

AILSHIE, J.—This is an original proceeding for writ of mandate brought by plaintiff, on behalf of himself and all other persons claiming remuneration and compensation for labor, services, and expenses, under the provisions of House Bill No. 136, being chap. 85, 1943 Session Laws, which remuneration and compensation is alleged to be due under the "Dairy Inspection Account", as provided in sec. 7 of the act ('43 S.L., p. 174) as follows:

"Whenever an inspection of any dairy product is made by the Department of Agriculture, or whenever permanent

or temporary inspectors or employees are used by said department for the purpose of enforcing or promulgating an inspection or sanitary program for any dairy product, the *department is authorized to fix, assess and collect or cause to be collected from the dairy processors, fees or assessments for such services when they are performed* by such employees or agents of the department, *such fees to be on a uniform basis in an amount reasonably necessary to cover the cost of such inspections and the administration of this section of the act;* provided, however, that the department shall so adjust the fees to be collected under this section as to *meet the expenses necessary for this inspection service only,* all of said fees to be used for this purpose alone; and provided further, that in no event shall the fees or assessments exceed eight-tenths (.8) of one mill per pound butterfat received by processors. All such fees and moneys collected or received by the department, its employees or agents under this act shall be deposited in the general fund of the state to the credit of the Department of Agriculture, and marked, 'Dairy Inspection Account', said funds to be used for dairy inspection only, as above provided." (Italics supplied.)

Alternative writ issued, commanding defendant to show cause why he should not issue and deliver to plaintiff a state warrant for the sum of $39.20, covering his claim which has been approved by the State Board of Examiners.

As answer to the writ, defendant alleges in substance: (a) That there are no funds appropriated against which he could draw any warrant for payment of plaintiff's claim; (b) that chap. 85, 1943 Sess. Laws, makes no appropriation whatsoever; (c) that the statute requires the tax moneys therein authorized to be, and they have been, deposited in the general fund and designated as "Account No. 1-4-07-1"; that the receipts "are unappropriated moneys in the general fund, not presently available"; (d) that, to create continuing appropriations in the general fund, or to create special accounts in that fund for particular departments, would be violative of constitution, art. 7, sec. 13; (e) that no mention is made in the title to the act (chap. 85, supra) of any intention to appropriate anything, as required by constitution, art. 3, sec. 16.

It is plaintiff's contention, that the court should "look at the intent of the legislature and find out if there is sufficient language in the act to carry out this intent."

There is no room for doubt that the act provides and was so intended for thorough inspection and care of dairy products of all kinds and grades. It prescribes rules and regulations and authorizes the appointment of inspectors to enforce observance of its requirements. For the purpose of financing and executing the inspections and enforcing the regulations, it provides for the collection of fees not exceeding .8 of one mill per pound butterfat received and processed. No fault is found with the requirement for the payment of fees or the collection thereof. The contention is made, however, by defendant that, after the money is collected and turned over to the general fund of the state treasury, there is no authority for disbursing the money, for the reason that no appropriation thereof has been made. The constitution, sec. 13, art. 7, provides that "No money shall be drawn from the treasury, but in pursuance of appropriations made by law." It is now contended that this constitutional provision has not been observed in the passage of the act here in question, for the reason that nowhere in the act is to be found any words of appropriation of any funds.

It is true that the word "appropriate" is not used but, as above stated, it is contended that sec. 7, supra, does, in substantial and effective language, appropriate all the fees that may be collected under the act for payment of the bills that may be incurred in carrying out its purposes.

An analysis of the provisions of sec. 7 discloses that "The department is authorized to fix, assess and collect . . . fees or assessments for such services when they are performed by such employees or agents of the department . . . in an amount . . . necessary to cover the cost of such inspections and the administration of this section of the act." Then follows the proviso as follows: "however, that the department shall so adjust the fees . . . as to meet the expenses necessary *for this inspection service only.*" It further says "all of said fees to be used for *this purpose alone;*" and it is further provided, "that in no event shall the fees or assessments exceed eight-tenth (.8) of one mill per pound butter fat received by processors." The section then concludes: "*All such fees and moneys* collected . . . shall be deposited in the general fund of the state to the credit of the Department of Agriculture and *marked* 'DAIRY INSPECTION ACCOUNT', said funds to be used for *dairy inspection only,* as above provided."

It seems perfectly clear, from an analysis of the section, that the legislature intended to provide fees for the administration of the act and that the fees so collected should be used for that purpose ONLY. In order to carry out such purpose, it provided that such fees should be deposited in the state treasury in the general fund to the credit of the Department of Agriculture, under which department the act is to be administered; and that it should be earmarked and set aside as a special fund designated "Dairy Inspection Account." This amounted to as complete an appropriation of the *specific fund* for a specific purpose as if the word "appropriate" had been used. There does not appear to be any room for reasonable doubt or uncertainty as to how the fund is to be raised, what it was to be used for, where it was to be deposited, or to whom and for what purpose it is to be disbursed. This amounts to an appropriation of the fund. The act sets aside the entire fund to be raised for the special purpose of its administration.

Our duty extends only to a discovery of the intent of the legislature as manifested by the act itself. (*McConnel v. Gallet,* 51 Ida. 386, 6 P. (2d) 143; *Robinson v. Enking,* 58 Ida. 24, 69 P. (2d) 603. The act before us does not fall within the inhibitions that prevailed in *Herrick v. Gallet,* 35 Ida. 13, 204 P. 477, and *Jackson v. Gallet,* 39 Ida. 382, 228 P. 1068.

The contention, that to hold this act a valid appropriation will work a "complete disruption of the accounting system of the state", is not a matter for judicial consideration. The fact, that the act may make bookkeeping and accounting more difficult and laborious, is a question for consideration of the legislature, with which this court has no authority to interfere.

It is next contended that, if an appropriation of this fund has been made, nevertheless, it is invalid for the reason that it is not comprehended within the title of the act. The title to the act is as follows: (1943 S. L., chap. 85, p. 171)

"AN ACT

ESTABLISHING IN THE DEPARTMENT OF AGRICULTURE PROVISIONS FOR SANITARY INSPECTION OF DAIRY PRODUCTS UNDER THE DIRECTION OF THE COMMISSIONER OF AGRICULTURE, THE DIRECTOR OF DAIRYING OR ANY OTHER OFFICERS OR EMPLOYEES OF THE DEPARTMENT

OF AGRICULTURE; ESTABLISHING RULES AND REGULA-
TIONS PROVIDING FOR THE IDENTIFICATION OF DAIRY
PRODUCTS CONDEMNED BY THE DEPARTMENT OF AGRI-
CULTURE AS UNFIT FOR HUMAN CONSUMPTION; AUTHOR-
IZING COOPERATION WITH THE FEDERAL GOVERNMENT
IN MATTERS PERTAINING TO THE DEPARTMENT OF AGRI-
CULTURE; AUTHORIZING THE DEPARTMENT OF AGRICUL-
TURE TO MAKE RULES AND REGULATIONS DEEMED
NECESSARY IN CARRYING OUT THE PURPOSES OF THIS
ACT, INCLUDING ASSESSMENTS AND FEES UPON THE
INDUSTRY, AND DECLARING AN EMERGENCY."

This is not an amendatory act but, on the contrary, is an original, independent, legislative act. It is devoted to the subject of establishing in the Department of Agriculture a sanitary inspection bureau or division and for setting up rules and regulations for its government, provision for raising revenue to finance the agency, and all the necessary legal machinery establishing, regulating, and conducting sanitary inspection of dairy products. The title says, among other things, that it is "authorizing cooperation with the federal government in matters pertaining to the Department of Agriculture"; also "to make rules and regulations deemed necessary in carrying out the purposes of the act", *including assessments and fees upon the industry*. Since the act does not attempt to appropriate any funds except those which it provides for the collection of, it certainly does not go beyond the scope of the title. On the other hand, the disbursement of funds thus created is a concomitant part of the completed legislative act. (*State v. Pioneer Nurseries Co.*, 26 Ida. 332, 143 P. 405.) We think it was clearly within the scope of the title of such an act, to provide for the method of disbursing the fund thus collected in the state treasury for the enforcement of the act.

The writ is made permanent. No costs awarded.

Budge, Givens and Dunlap, JJ., concur.

Holden, C.J., did not sit at the hearing or participate in this decision.