370 P.2d 778

STATE of Idaho, on the relation of Joe R. WILLIAMS, State Auditor of the State of Idaho, Plaintiff-Appellant,

v.

Walter C. MUSGRAVE, Manager of the State Insurance Fund, State of Idaho; Glenn A. Coughlan and Joseph M. Imhoff, Jr., Defendants-Respondents.

No. 8981.

Supreme Court of Idaho.

Feb. 2, 1962.

Rehearing Denied Feb. 2, 1962.

Frank L. Benson, Atty. Gen., Thos. Y. Gwilliam, Spec. Asst. Atty. Gen., E. G. Elliott, Asst. Atty. Gen., for appellant.

Elam & Burke, Hawley & Hawley, Boise, for respondent.

TAYLOR, Justice.

This action was brought by the state auditor (appellant) under authority of I.C. § 67–1001, subd. 13, to recover money alleged to have been paid out of the state insurance fund by the state treasurer on sight drafts drawn by the late Walter C. Musgrave, as manager of the state insurance fund, payable to the defendant (respondent) Glenn A. Coughlan, the proceeds of which were received by Coughlan and his law firm. The firm consists of Coughlan and Imhoff, attorneys at law.

The district court found that the moneys were lawfully paid and received and entered its judgment dismissing the action.

Plaintiff brought this appeal from the judgment.

In his brief appellant poses the issues raised as follows:

"1. Were the payments of the moneys made by the defendant Musgrave from that part of the State Insurance Fund not appropriated by the

Legislature for administrative expenses and received by the defendant law firm, Coughlan and Imhoff, unlawfully made?

"2. May anyone except the Attorney General or his duly appointed assistants advise and represent the Manager of the State Insurance Fund and 'Fund officials' in the Courts and before the Industrial Accident Board?"

From January, 1947, to June, 1957—with the exception of a period when he was in the naval service—Coughlan had been employed as attorney for the state insurance fund, most of the time with the designation of assistant attorney general, and was paid a monthly salary. In June or July, 1957, he entered into an agreement with the manager of the fund to act as attorney for the fund in cases referred to him by the manager. He was to be compensated upon the basis of fees to be charged by him in each individual case. No retainer was agreed upon or paid.

Coughlan performed legal services for the fund pursuant to the agreement from August 1, 1957, to June 30, 1959. He was paid by means of sight drafts drawn by the manager of the fund, and directed to the state treasurer as drawee. The payments included expenses incurred by Coughlan in the performance of the services. Also in pursuance of the agreement, Coughlan acted for the fund in reclaiming from third parties moneys recoverable by the fund under rights of subrogation. In these cases he deducted his fees, on an agreed contingent basis, and his expenses from the recovery, and remitted the balance to the fund. Mr. Coughlan furnished his own office space, stenographic help, supplies and all overhead expenses. No taxes or other deductions were withheld from the payments made to Coughlan.

The statutes provide:

"There is hereby created a fund, to be known as the State Insurance Fund, for the purpose of insuring employers against liability for compensation under this Workmen's Compensation Law and the Occupational Disease Compensation Law and of securing to the persons entitled thereto the compensation provided by said laws. Such fund shall consist of all premiums and penalties received and paid into the fund, of property and securities acquired by and through the use of moneys belonging to the fund, and of interest earned upon moneys belonging to the fund and deposited or invested as herein provided.

"Such fund shall be administered by the state insurance manager without liability on the part of the state beyond the amount of such fund. Such fund shall be applicable to the payment of losses sustained on account of insur-

ance and to the payment of compensation under the Workmen's Compensation Law and the Occupational Disease Compensation Law and of expenses of administering such fund." I.C. § 72–901.

"There is hereby created the office of State Insurance Manager, elsewhere in this chapter referred to as Manager, whose duties it shall be to conduct the business of the state insurance fund, and the said manager is hereby vested with full authority over said fund, and may do any and all things which are necessary and convenient in the administration thereof, or in connection with the insurance business to be carried on by the manager under the provisions of this chapter. * * *" I.C. § 72–902.

"a. The manager shall have full power to determine the rates to be charged for insurance in said fund, and to conduct all business in relation thereto, all of which business shall be conducted in the name of the state insurance manager. * * *" I.C. § 72–903.

"The manager may, in his official name, sue and be sued in all the courts of the state, and before the industrial accident board in all actions or proceedings arising out of anything done or offered in connection with the state insurance fund or business relating thereto." I.C. § 72–904.

"The manager may make contracts of insurance as herein provided and such other contracts relating to the state insurance fund as are authorized or permitted under the provisions of this chapter." I.C. § 72–905.

"The manager may employ such assistants, experts, statisticians, actuaries, accountants, inspectors, clerks, and other employees as the department may deem necessary to carry out the provisions of this chapter and to perform the duties imposed upon him by this chapter." I.C. § 72–906.

"The manager shall not, nor shall any person employed by him, be personally liable in his private capacity for or on account of any act performed or contract entered into in an official capacity in good faith and without intent to defraud, in connection with the administration of the state insurance fund or affairs relating thereto." I.C. § 72–907.

"The state treasurer shall be the custodian of the state insurance fund, and all disbursements therefrom shall be paid by him upon warrants signed by the state auditor, or upon sight drafts signed by the state insurance manager as provided by section 72–927. The state treasurer shall give a separate and

additional bond in an amount to be fixed by the governor, and with sureties approved by him, conditioned for the faithful performance of his duty as custodian of the state insurance fund. * * *" I.C. § 72–910.

Constitutional provision:

"No money shall be drawn from the treasury, but in pursuance of appropriations made by law." Constitution, art. 7, § 13.

Plaintiff contends that the money in the fund when paid into the state treasury becomes state or public money, and that it cannot be drawn therefrom except upon an appropriation made by the legislature. The legislature at each biennial session, since the fund was established in 1917, has appropriated money from the state insurance fund for the administrative expenses of the manager. The payments to Coughlan were not made from the appropriation for the period involved, but were paid by the state treasurer on sight drafts drawn by the manager of the fund under authority of I.C. § 72–927, which provides as follows:

"The state insurance manager shall submit each month to the state board of examiners an estimate of the amount necessary to meet the current disbursements for workmen's compensation insurance losses and premium refunds to policyholders from the state insurance fund, during each succeeding calendar month, and when such estimate shall be approved by the state board of examiners, the state treasurer is authorized to pay the same out of the state insurance fund upon sight drafts drawn by the state insurance manager. At the end of each calendar month the state insurance manager shall account to the state board of examiners for all money so received, furnishing proper vouchers therefor."

Plaintiff contends that the payments in question were neither "workmen's compensation insurance losses" nor "premium refunds" and therefore were not authorized by the foregoing statute.

For convenience and accounting purposes, and for many years, there has been established by the state treasurer a fund known as the "Rotary Fund." This fund is used for the purpose of making payments of "compensation, pensions, doctor and medical payments, hospital and nurse, claimants' expense, burial and miscellaneous, drugs and appliances; investigations and hearing expense, premium refunds, deposit refunds, and National Guard." The treasurer pays out moneys from the rotary fund upon sight drafts drawn by the manager of the insurance fund for the above purposes. The rotary fund is reimbursed from the state insurance fund upon monthly accounts and estimates of the needs of the fund for current disbursements. These

accounting reports and estimates are submitted to the state board of examiners, through the state auditor as ex officio secretary of the board. When they are approved, the rotary fund is reimbursed by means of warrants drawn by the auditor pursuant to "Rotary Fund Reimbursement Voucher" made and submitted to the auditor with the "Record of Sight Drafts." The warrants thus drawn by the auditor are then deposited with the treasurer, who credits the rotary fund with the amount of the warrants. Thus, the requirements of I.C. § 72–927 are satisfied. The withdrawals from the rotary fund paid to Coughlan were accounted for by the manager under the expense classification of "Investigation and Hearings" as insurance losses.

■ Mr. Coughlan was not an employee of the state within the meaning of the standard appropriations act. I.C. Title 67, c. 36. His remuneration was not covered by the appropriation for "salaries and wages." His relationship to the fund was that of attorney and client, on a fee basis, which made him an independent contractor. Associated Indemnity Corp. v. Industrial Accident Comm., 56 Cal.App.2d 804, 133 P.2d 698; Otten v. San Francisco Hotel Owners Ass'n., 74 Cal.App.2d 341, 168 P.2d 739; Los Angeles County v. Ford, 121 Cal.App. 2d 407, 263 P.2d 638; Kennedy v. Ross, 28 Cal.2d 569, 170 P.2d 904; New Independent Tobacco Warehouse No. 3 v. Latham (Ky.),

282 S.W.2d 846. Cf. Industrial Com. v. Navajo County, 64 Ariz. 172, 167 P.2d 113. The manager did not retain control of the details of Coughlan's work, but looked to him only for results. See Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657. The fees paid for his service were charged to the individual policy or coverage in respect to which the service was rendered, and as a proper part of the insurance loss thereon. Such fees were not a part of the overhead administrative expenses of the fund and hence were not payable out of the appropriation made for the payment of such expenses.

■ The language of I.C. §§ 72–901, 72–902, and 72–927, is sufficient to constitute a continuing appropriation of the money in the fund for the payment of all compensation, expenses, or other obligations incurred in carrying out the purpose of the law. Dahl v. Wright, 65 Idaho 130, 139 P.2d 754; McConnel v. Gallet, 51 Idaho 386, 6 P.2d 143.

■ The money in the fund does not belong to the state and is not in the state "treasury" within the meaning of art. 7, § 13, of the Constitution. It is deposited with the state "treasurer" as "custodian" and is held by him as such for the contributing employers and the beneficiaries of the compensation law, and for the payment of the costs of the operation of the fund. I.C. § 67–3608; I.C. § 72–910; Burum v. State

Comp. Ins. Fund, 30 Cal.2d 575, 184 P.2d 505, at 510; Middlebusher v. State Industrial Accident Comm., 147 Or. 459, 34 P.2d 325; In re Winborne, 34 Wyo. 349, 244 P. 135; State ex rel. Sherman v. Pape, 103 Wash. 319, 174 P. 468; Allen v. City of Omaha, 136 Neb. 620, 286 N.W. 916; Bordson v. North Dak. Workmen's Comp. Bureau, 49 N.D. 534, 191 N.W. 839; State ex rel. Olson v. Jorgenson, 29 N.D. 173, 150 N.W. 565; 37 C.J.S. Fund or Funds, page 1404.

In State ex rel. Beebe v. McMillan, 36 Nev. 383, 136 P. 108, the Nevada court held, under constitutional and statutory provisions the same as ours, that the state insurance fund is not a state fund in the state treasury, as follows:

"The fact that the State Treasurer is made the custodian of the fund does not necessarily make it a part of the state treasury. * * * These premiums are not paid for the purposes for which taxes and revenues are usually paid into the state treasury, and could not be used or made available for the payment of warrants for the ordinary expenses of the state government which are payable out of the state treasury. * * * The 'state treasury' has a well-understood meaning, which does not include such a special fund as this one, providing for injured employes and their dependents, and we conclude that the requirements for presentation of claims against the state treasury to the Board of Examiners and the Controller do not apply to the state insurance fund." 136 P. at 109, 110.

■ The state insurance fund is an agency of the state created for the purpose of carrying on and effectuating a proprietary function as distinguished from a governmental function. It serves a "public purpose" but not a "governmental purpose." State of North Dakota v. Olson (C.C.A.) 33 F.2d 848; Helvering v. Powers, 293 U. S. 214, 55 S.Ct. 171, 79 L.Ed. 291; State ex rel. State Ins. Fund v. Bone (Okl.) 344 P.2d 562.

The North Dakota act provided that

"The state treasurer 'shall be the custodian of the workmen's compensation fund and all disbursements therefrom shall be paid by him upon vouchers authorized by the Workmen's Compensation Bureau.' " State ex rel. Stearns v. Olson, 43 N.D. 619, 175 N.W. 714, at 716.

In that case the court said:

"The Workmen's Compensation Fund is a special fund, and is not a state fund. Hence the Legislature had the authority to designate such public officials as to it seemed proper, and impose upon them the duty of disbursing such fund in accordance with the provisions of the law, and had

authority to prescribe the manner of the disbursement, as by vouchers, warrant, etc. The fund not being a public one, the state auditor would have no authority to draw warrants thereon, unless specifically authorized so to do by the law under the provisions of which the fund is accumulated; the manner of disbursing the fund is specifically provided for in paragraph 1 of section 13 of the act, which is above set forth. The Legislature had authority to provide for the disbursement of the fund in that manner, and the same is neither illegal nor unconstitutional." 175 N.W. at 717.

Referring to the constitutional provision that "No money shall be paid out of the state treasury except by appropriation by law * * *," the court said:

"The money referred to in said section is money belonging to the state, which has been accumulated in the treasury as public funds, which are to be used in carrying on the state government. It means such money as is raised by taxation, or which has accumulated in the treasury by the payment of fees authorized by law to be charged for various purposes, or any manner which would constitute such money a public fund of the state. The auditor's duties relate to the public funds of the state. * * * It is perfectly clear that the workmen's compensation fund is no part of the state fund, and is, in no sense, public money. It is a special fund, accumulated by the collection of annual premiums from employers, the amount of which is determined and fixed by the Workmen's Compensation Bureau for the employment or occupation operated by such employer, and determined further by the classification rules and rates made and published by the bureau. When the fund is accumulated, the state treasury is, by the provisions of the act, made the custodian of it." 175 N.W. at 716, 717.

In Senske v. Fairmont & Waseca Canning Co., 232 Minn. 350, 45 N.W.2d 640, the court held that the workmen's compensation fund is a special fund, to be paid out in the manner provided by the act creating it, and further said:

"By the wording of the statute, it is quite clear that the state treasurer as custodian is possessed of no discretionary power over the disbursement of total disability benefits from such fund, but is vested only with the ministerial duty to disburse its proceeds *as directed by the industrial commission.* * * *

"Furthermore, it is erroneous to assume that an employe's claim for total disability benefits from the special fund is in the nature of a claim against the

state which may be compromised and settled by the attorney general, or to assume that the attorney general's recommendation of such a compromise is a material factor in ascertaining whether the industrial commission has abused its discretion in declining to approve such a settlement." 45 N.W.2d at 645, 646.

In State ex rel. Washington Toll Bridge Authority v. Yelle (Wash.) 82 P.2d 120, the court held that the state toll bridge fund was not a state fund, saying:

"In the final analysis the test of whether the state treasurer, under this act, is acting as such, or merely as a convenient, qualified and suitable official to serve as the custodian of the funds of an administrative body, namely, the Toll Bridge Authority, is whether its funds are required by the constitution to be placed with the state treasurer. The mere fact the state treasurer is called upon to render certain services with respect to these funds in no wise makes the moneys so received by him state funds in the state treasury." 82 P.2d at 125.

The issue as to the status of the state insurance fund was not raised by either party in State ex rel. Hansen v. Parsons, 57 Idaho 775, 69 P.2d 788. It was urged by amici curiae on petition for rehearing, but was not discussed by the court. The court and counsel erroneously assumed that the money in the fund was state money, and therefore concluded that a claim against the fund was a claim against the state. This assumption is contrary to I.C. § 72–901 of the act creating the fund, which refers to the moneys as "belonging to the fund" and provides that the fund shall be administered "without liability on the part of the state beyond the amount of such fund", and to I.C. § 72–910, which provides that "The state treasurer shall be the *custodian* of the state insurance fund" (emphasis added). See Barnard v. Young, 43 Idaho 382, 251 P. 1054; State ex rel. State Ins. Fund v. Bone (Okl.) 344 P.2d 562, 568. To the extent that State v. Parsons, supra, is in conflict herewith, it is hereby overruled.

In State ex rel. Taylor v. Robinson, 59 Idaho 485, 83 P.2d 983, the court was concerned with the unemployment compensation fund, created by chapter 12 of the Third Extraordinary Session of the 1935 legislature, and in cooperation with the federal government. That case is distinguishable from this in that there the fund was derived from an "excise tax", whereas the state insurance fund is derived for the most part from premiums paid on insurance policies. No tax moneys are involved. In the Robinson case the court held the unemployment compensation fund was "public moneys" and that claims against such fund must be passed upon by

the state board of examiners. Anent the contention of the defendants that such procedure would be cumbersome and unworkable, the court said, "the remedy is with the people of the State and not this Court," 59 Idaho at 492, 83 P.2d at 986. It is to be noted that the decision was handed down on October 25, 1938, and that the legislature in the 1941 session declared that such claims "shall not require approval by the State Board of Examiners in any instance where such requirement would conflict with the provisions of Federal Statutes or standards established by the Social Security Board conditioning the availability of the Federal funds." 1941 Session Laws, page 419. The 1941 act was repealed and replaced by the Employment Security Law by the 1947 session of the legislature. In that act the legislature declared "nor shall such expenditures require the approval of the State Board of Examiners." C. 269, 1947 S.L. at page 815. The constitutionality of such action by the legislature has not been questioned.

■ The state insurance fund is not a corporation within the meaning of Constitution, art. 3, § 19, forbidding special laws "creating any corporation", nor within the meaning of Constitution, art. 11, § 2, against the granting of a charter by special law. In re Edwards, 45 Idaho 676, 266 P. 665; State ex rel. Tattersall v. Yelle, 52 Wash.2d 856, 329 P.2d 841. Cf. State Water Conservation Board of Idaho v. Enking, 56 Idaho 722, 58 P.2d 779. Although not a corporation, the fund has some of the characteristics of a private corporation and occupies a similar status. Atwood v. State of Idaho, Dept. of Agriculture, 80 Idaho 349, 330 P.2d 325; Rivera v. Johnston, 71 Idaho 70, 225 P.2d 858; Brady v. Place, 41 Idaho 747, 242 P. 314, 243 P. 654; Gilmore v. State Comp. Ins. Fund, 23 Cal. App.2d 325, 73 P.2d 640.

■ In support of his contention that the act does not authorize the manager to employ counsel outside of the office of attorney general, the plaintiff urges that in 1939 (S.L.1939, c. 251) what now is I.C. § 72–906, supra, was repealed and replaced by a provision which created a compensation insurance commission with specific power to employ, among others, "legal assistants," and that by S.L.1941, c. 20, the 1939 provision was amended and the words, "legal assistants" eliminated therefrom. Plaintiff argues that this was an expression of the legislative intent to deny to the manager the authority to employ legal assistants. We do not agree. The 1941 act repealed the provision providing for a compensation insurance commission and the powers given it, and enacted what is now I.C. § 72–906 as a part of the plan to restore the fund to the operation of the manager. There was no amendment of the 1939 provision; it was repealed and the old section restored. In this we see no legislative intent to deny to the manager

any power given to him prior to 1939. The statute as it was worded prior to 1939, and as it is now worded (I.C. § 72–906) was and is sufficiently broad and explicit to encompass the employment of a legal assistant, as was done in this case. Padgett v. Williams, 82 Idaho 28, 348 P.2d 944; Barnard v. Young, 43 Idaho 382, 251 P. 1054; Burum v. State Comp. Inc. Fund, 30 Cal.2d 575, 184 P.2d 505; State Comp. Ins. Fund v. Riley, 9 Cal.2d 126, 69 P.2d 985, 111 A.L.R. 1503.

There was nothing illegal or improper in the agreement between the manager and Coughlan for the prosecution of subrogation claims on a contingent fee basis. Burum v. State Comp. Ins. Fund, supra. Counsel cites State v. National Surety Company, 29 Idaho 670, 161 P. 1026, 2 A.L.R. 251. In that case one T. C. Coffin acted as special counsel for the state in the prosecution of an action in which the state recovered upwards of $145,000 upon the bond of O. V. Allen, as reimbursement for state moneys embezzled by Allen while serving as state treasurer. Coffin intervened and prayed an order of the court requiring a portion of the proceeds of the judgment to be paid into the court to be held for the payment of his attorney's fees and expenses in conducting the litigation on behalf of the state. The court held that the statutory provision for a lien in favor of an attorney upon a judgment obtained for his client is not applicable where the sovereign state is the client, and that the attorney was relegated to his remedy by way of a claim to be presented to the board of examiners and to the legislature by way of a recommendatory judgment of this court. The decision was reached by two to one vote of the three justices. In his dissenting opinion Chief Justice Sullivan called attention to the number of authorities, holding that an attorney in such case is entitled to a lien upon and payment from the proceeds of a judgment obtained by him on behalf of the state, on the theory that until the money actually reaches the state treasury it is not state money and only the remainder of the recovery after payment of expenses is state money, and that the courts may properly provide for the payment of such expenses before the recovery is paid over to the state. Texas v. White (In re Paschal), 10 Wall. 483, 77 U.S. 483, 19 L.Ed. 992; State v. Ampt, 6 Ohio Dec. 699, 7 Am.Law Rec. 469; 5 Cent. Dig.; Board of Com'rs of Washington County v. Clapp, 83 Minn. 512, 86 N.W. 775. Later cases holding to the same effect are: Regan v. Babcock, 196 Minn. 243, 264 N.W. 803; Dickinson v. Hot Mixed Bituminous Industry of Ohio (Ohio App.) 58 N.E.2d 78; State ex rel. Yontz v. West, 135 Ohio St. 589, 21 N.E.2d 987.

Our discussion of the State v. National Surety Company case is not to be construed as a departure from the majority opinion therein. Our purpose is to show that the

case is not in point here, because in this case we are dealing with the protection and recovery of funds which do not belong to the state. The above cases are cited to show that even where state funds are involved, there are respectable authorities holding contrary to our decision in State v. National Surety Company. This emphasizes the propriety of allowing the payments to Coughlan to be made out of money saved to the state insurance fund, or recovered for the fund, for his services and expenses in the individual cases referred to him, since the money here involved is not state money.

■ Plaintiff calls attention to the terms of Const. art. 4, § 18, clothing the board of examiners "with power to examine all claims against the state," emphasizing the word "all." That provision of the constitution has no application in this case, since *no* claim against the state is involved.

The same section of the constitution further provides that the board of examiners shall "perform such other duties as may be prescribed by law." Under this provision the legislature may provide for examination by the board of examiners of claims against funds created and administered by its authority. Padgett v. Williams, 82 Idaho 28, 348 P.2d 944.

The state insurance fund, not being state money, and claims against it not being claims against the state, the state board of examiners has no power or jurisdiction over the expenditure or disbursement thereof, except such as is given to it by the legislature.

Except as the standard appropriations act, I.C., Title 67, c. 36, may apply to the biennial appropriation made to the manager of the fund for administrative expenses, the only authority given to the board of examiners in relation to the state insurance fund is that set out in I.C. § 72-927. That is the section which authorizes the state treasurer to pay insurance losses —among other things—out of the fund upon sight drafts drawn by the manager. The board of examiners is there authorized to examine and approve the monthly estimates made by the manager "of the amount necessary to meet the current disbursements." Obviously this provision was intended as a check upon the disbursement of the fund, but it does not authorize arbitrary refusal to approve legitimate commitments of the manager. It is the manager who "is hereby vested with full authority over said fund," (I.C. § 72-902) not the board of examiners.

■ The statute, I.C. § 72-907, supra, granting immunity to the manager and any person employed by him is applicable here. The statute is constitutional. State ex rel. Jackson v. Middleton, 215 Ind. 219, 19 N.E.2d 470, 20 N.E.2d 509; McCrary v. Schenebeck, 191 Ark. 698, 87 S.W.2d 572,

298 U.S. 36, 56 S.Ct. 672, 80 L.Ed. 1031; Hansen v. Raleigh, 391 Ill. 536, 63 N.E. 2d 851, 163 A.L.R. 1425, and note 1435; Annotations, 38 A.L.R. 1512, 96 A.L.R. 295. The contract between the manager and Coughlan was entered into, and executed on both sides, in good faith and without intent to defraud. Plaintiff made no effort to prove the contrary. The fees and expenses charged were reasonable and the fund received its quid pro quo in full.

The attorney general's brief on petition for rehearing contains derogatory charges and insinuations against Mr. Coughlan. These improper effusions are immaterial to any issue raised, and are not supported by anything in the record. Such use of the brief as a vehicle for heaping calumny upon the character of a fellow attorney we condemn as unprofessional.

Judgment affirmed.

No costs allowed.

SMITH, C. J., and KNUDSON and McQUADE, JJ., concur.

Petition for rehearing denied.

SMITH, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.

McFADDEN, Justice (Concurring specially).

I concur in the majority opinion in all regards except as to its conclusion that withdrawals from the fund paid to Mr. Coughlan under the classification of "Investigation and Hearings" as insurance losses, are payments authorized by I.C. § 72–927.

I.C. § 72–901 quoted in the majority opinion provides for the creation of the fund, the payment to be made to it, and the purposes for which the fund shall be applicable.

I.C. § 72–910 establishes the State Treasurer as custodian of the fund further defines how payments shall be made from the fund as follows:

"* * * all disbursements therefrom shall be paid by him [State treasurer] upon warrants signed by the state auditor, or upon sight drafts signed by the state insurance manager as provided by section 72–927."

There are thus only two methods by which moneys may be withdrawn from the fund, i. e., by a warrant executed by the state auditor, or upon sight draft by the state insurance manager.

I.C. § 72–927 limits payments by sight draft of the manager of the fund to disbursements for workmen's compensation insurance losses and premium refunds. That section provides for the manager to submit to the state board of examiners his estimated requirements for moneys for the payment of such items during the following month, and upon such approval, the manager is authorized to draw sight drafts im-

mediately payable by the state treasurer. The sight drafts by the terms of the statute must be limited to workmen's compensation insurance losses and premium refunds. This limitation of the statute in my opinion, only has reference to the payment in settlement of obligations of the fund arising under outstanding insurance policies for workmen's compensation, occupational disease compensation, national guard, and premium refunds. Such conclusion is based on a consideration of the threefold purposes for which the fund is made applicable, (I.C. § 72–901).

a. To the payment of lossses sustained on account of insurance written by the fund.

b. To the payment of compensation under the workmen's compensation and the occupational disease compensation laws.

c. To the payment of expenses of administering such fund.

The following statement in American Republic Life Ins. Co. v. Cummings, 218 Ark. 888, 239 S.W.2d 10, 11, is particularly applicable here:

"The word 'loss' has an established meaning in the field of insurance, which is: 'Death, injury, destruction, or damage, in such a manner as to charge the insurer with a liability under the terms of the policy.'"

The term "losses" as used in I.C. § 72–927 would thus have reference only to the obligations arising under policies of insurance issued by the fund, which obligation would be settled by payment to the employee for his injury (I.C. § 72–201), or payment to the employee's dependents for his death (I.C. § 72–301), or on the employee's behalf for medical attendance, etc., (I.C. § 72–307). The terms employed in I. C. § 72–927 would thus limit payment by sight draft to items embraced in first two of the three purposes of the fund mentioned above, both of which items are for or on behalf of the employee. The payments for the third purpose of the fund, i., e., expenses of administration, would be disbursed through the warrants of the state auditor. Payments made for attorney's fees (which are not for the benefit of the particular injured employee, and are not in settlement of obligations arising under the policies issued), are not payments within the purview of "losses" as mentioned in I. C. § 72–927; they are rather expenses of administration provided for by I.C. § 72–901, payment of which has been authorized by the biennial appropriation act of the legislature.

The payments, however, having been made to Mr. Coughlan, for services deemed by the manager of the fund as "necessary and convenient in the administration of the fund", cannot be said to be illegal or unlawful, as they have been approved, as

the record discloses, by the Board of Examiners of this state, and paid. This Board having approved the monthly requests and statements of disbursements of the manager, covering these items, appellant cannot now be heard to complain.

For these reasons, I concur.